Judge Berman

'08 CIV 6394

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANDRA LIFSCHITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEXION SPECIALTY CHEMICALS, INC., CRAIG O. MORRISON, and JOSHUA J. HARRIS,<br><br>Defendants. | Civ. Action No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED<br><br>RECEIVED<br>JUL 17 2008<br>U.S.D.C. S.D. N.Y.<br>CASHIERS |

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Hexion Specialty Chemicals, Inc. ("Hexion") and Huntsman Corporation ("Huntsman"), as well as, press releases and media reports about Huntsman and Hexion, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal class action on behalf of purchasers of the common stock of Huntsman between May 14, 2008 and June 18, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Apollo, (as defined below) and Defendant Harris have their principal offices in this District and the principal acts and decisions with respect to the wrongdoing alleged herein were made in this District.

5. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff Sandra Lifschitz, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Huntsman during the Class Period and has been damaged thereby.

7. Defendant Hexion is the global leader in thermoset resins. It is owned by an affiliate of the private investment firm Apollo Management, L.P. ("Apollo"). Hexion's principal executive office is located in Columbus, Ohio. Hexion outbid Basil Holdings BV in its quest to

acquire Huntsman in July 2007, bidding $10.8 billion versus $9.6 Billion by its rival. In May 2007, Hexion was one of two principal bidders for Huntsman.

8. Defendant Craig O. Morrison ("Morrison") is, and was at all relevant times, Hexion's Chairman, Chief Executive Officer and President.

9. Defendant Joshua J. Harris ("Harris") is and was, at all relevant times, a Director of Hexion. Harris is a founding senior partner at Apollo. Harris is a New York resident with his principal place of business at the offices of Apollo, 9 West 57th Street, New York, New York.

10. Harris controlled the business decisions of Hexion and the contents of its SEC filings and press releases. Morrison signed Hexion's SEC filings and both Morrison and Harris are quoted in Hexion's Press Releases. Because of the signed and quoted statements made by defendants to the market and in Hexion SEC filings and Hexion press releases with respect to the proposed merger between Hexion and Huntsman, each defendant had a duty to timely, fully and truthfully disclose all material facts and information concerning the proposed merger. Prior to entering into the Agreement and Plan of Merger with Huntsman, defendants received from Huntsman EBIDTA and cash flow projections for the next five years.

11. Each defendant is liable as a participant in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Huntsman common stock by disseminating materially false and misleading statements and/or omitting or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Hexion's efforts and intentions with respect to the merger with Huntsman; and (ii) caused Plaintiff and members of the Class to purchase Huntsman common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Huntsman between May 14, 2008 and June 18, 2008, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Hexion, its affiliates, Apollo, partners of Apollo and members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

13. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Huntsman's stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. More than 10 million shares of Huntsman common stock were traded on the NYSE during the Class Period. Record owners and other members of the Class may be identified from records maintained by Huntsman or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

15. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about Defendants' actions with respect to the merger with Huntsman;

(c) whether the price of Huntsman common stock was artificially inflated during the Class Period; and

(d) to what extent the members of the Class have sustained damages and the proper measure of damages.

17. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

18. With great fanfare, and after a battle with competing offerors, Hexion agreed to acquire all of the common stock of Huntsman in a merger transaction for $28 in cash for each share of Huntsman common stock. The agreement was announced on July 12, 2007, in a press

release issued by Hexion on that date. In the Press Release, Hexion stated that it signed a "definitive agreement to acquire Huntsman Corporation (NYSE:HUN) in an all-cash transaction valued at approximately $10.6 billion, including the assumption of debt." The Press Release further stated that:

> Under the terms of the agreement, Huntsman will receive $28.00 in cash for each outstanding Huntsman share of common stock. The Huntsman Board of Directors, based on the recommendation of a Transaction Committee of independent, non-management directors, has unanimously approved the agreement and has recommended that Huntsman stockholders vote in favor of the agreement. Huntsman has terminated its previous merger agreement with Basell AF.
>
> The agreement also provided that the cash price per share to be paid by Hexion will increase at the rate of 8% per annum (inclusive of any dividends paid) beginning 270 days from July 12, 2007. The transaction is subject to regulatory approvals and the affirmative vote of Huntsman's shareholders, as well as other customary conditions . . . The transaction is fully financed pursuant to commitments from affiliates of Credit Suisse and Deutsche Bank.

19. In the Press Release, defendant Harris was quoted:

> This acquisition will build Hexion into one of the world's largest specialty chemical companies. The combine enterprise will have annual sales of more than $14 billion and more than 21,000 associates and 180 facilities around the world. We are pleased to welcome the Huntsman team and look forward to building on their many accomplishments in the industry.

20. Defendant Morrison was quoted in the Press Release:

> This transaction provides Hexion and Huntsman with a great opportunity to create a world-class company with leading-edge products and technologies, a greatly expanded global reach particularly in the high-growth Asia-Pacific region, and an outstanding team of people. Our combined company will be one of the world's largest chemical companies and a leader in our ability to serve customers with an expanded portfolio of specialty materials and a significantly enhanced global presence.

21. On March 5, 2008, Hexion issued a Press Release, titled "Hexion Specialty Chemicals Announces Post-Merger Senior Leaders." The Press Release stated:

6

Hexion . . . today announced the post-merger senior leaders for the company, contingent on the close of its acquisition of Huntsman . . . . The transaction is expected to close during the second quarter of 2008, pending receipt of regulatory approvals and the satisfaction of other closing conditions . . . Hexion announced on July 12, 2007, that it had entered into a definitive agreement to acquire Huntsman Corporation in an all-cash transaction valued at approximately $10.6 billion, including the assumption of debt. The transaction was approved by Huntsman shareholders on October 16, 2007 and is subject to customary closing conditions, including regulatory approval in the U.S. and several other countries.

22. Defendant Harris was quoted in the Press Release:

We are pleased to have a talented and highly experienced team of chemical industry executives in place to build an industry-leading enterprise, once the transaction is completed. This combination will form one of the world's largest specialty chemical companies. It will have annual sales of more than $14 billion, and more than 21,000 associates and 180 facilities around the world serving a diverse range of customers and industries with leading technologies and products.

23. On April 1, 2008, Huntsman and Hexion announced that Hexion had exercised its right to extend the Termination Date by ninety days to July 4, 2008.

24. On May 9, 2008, Huntsman released its first quarter 2008 results.

Revenues for the first quarter of 2008 were $2,540.4 million, an increase of 13% as compared to $2,251.9 million for the first quarter of 2007.

Net income for the first quarter of 2008 was $7.3 million or $0.03 per diluted share as compared to net income of $46.6 million or $0.20 per diluted share for the same period in 2007. Adjusted net income from continuing operations for the first quarter of 2008 was $16.9 million or $0.07 per diluted share as compared to $57.4 million or $0.25 for the same period in 2007.

In commenting on the results, Peter Huntsman, CEO and President of Huntsman stated:

First quarter earnings were in line with our results for the fourth quarter and were achieved despite the continued escalation in prices for many of our raw material and feedstock the continued decline in the value of the U.S. dollar as compared to the Euro and the impact on our customers, suppliers and employees from the uncertainties related to our pending merger. In Polyurethanes, Adjusted EBITDA improved by over 10% as compared to the first quarter of last year as we continued to experience solid demand growth in MDI and selling prices have increased following recent global pricing announcements. In Pigments, our results improved as compared to the trough conditions that we experienced in the

7

second half of 2007. we are optimistic that these trends will continue as 2008 progress. In addition, we are entering into a traditionally stronger seasonal period for many of our key product lines.

With respect to the pending merger with Hexion, we continue to engage in constructive discussions with the antitrust agencies regarding the regulatory approvals required to close the transaction. Additionally, following the recent announcement of several senior leadership team roles for the combined company, integration planning with Hexion has continued at an accelerated pace.

25. On May 14, 2008, Hexion issued a Press Release reporting, *inter alia*, its financial results for the first quarter of 2008, ended March 31, 2008. In the Press Release, Hexion, under the heading "Transaction Update," on page 2, stated that it and Huntsman had agreed to allow additional time for the Federal Trade Commission to review the proposed merger of the two companies. Defendant Morrison stated in the Press Release:

We continue to fully cooperate with the regulatory agencies and are working closely with Huntsman and the agencies in order to obtain the regulatory approvals required to complete the merger.

26. Unbeknownst to the public, defendants had determined to abort the merger and to take steps to abrogate the Merger Agreement. Defendants were disturbed by Huntsman's financial results for the three quarters after the signing of the Merger Agreement as well as the state of the economic market and the global credit crunch. To that end, defendants took several key steps toward the accomplishment of their goal and failed to timely disclose to the market their actions and intention. On June 3, 2008, Hexion's Board of Directors, which is controlled by Apollo and defendant Harris, formally retained the services of Duff & Phelps, LLC ("Duff") as financial advisor to the Board of Directors to provide an opinion as to the solvency and adequacy of capital of Hexion and Huntsman on a combined basis after giving effect to the proposed merger. Hexion also retained the services of Wachtell, Lipton, Rosen & Katz

("Wachtell"), one of the most well-known law firms engaged in the practice of corporate mergers and acquisitions.

27.     On June 18, 2008, Duff sent the Board of Directors of Hexion a letter giving the Hexion Board Duff's opinion that the combined company's assets would not exceed its liabilities, that it would not have the ability to pay its total debts and liabilities as they become due and that it would have an unreasonably small amount of capital. Also on June 18, 2008, Defendants also had the Wachtell firm file, a complaint in the Court of Chancery of the State of Delaware, styled, *Hexion v. Huntsman*, seeking abrogation of the Merger Agreement.

28.     On June 18, 2008, after the filing of its lawsuit, Hexion filed a Form 8-K with the SEC, signed by defendant Morrison, submitting the complaint, the Duff opinion letter, a June 18, 2008 Notice to Huntsman and a June 18, 2008 Press Release announcing the filing of the lawsuit and the receipt of the Duff opinion letter.

29.     The reaction in the marketplace was devastating to the price of Huntsman's common stock. On June 19, 2008, the first day of trading after the June 18, 2008 statements by Hexion, the market price of Huntsman common stock fell approximately $8, or 40%, from $20.86 to close at $12.84, on enormous volume of approximately 43 million shares.

30.     On June 23, 2008, Huntsman, which had rejected the conclusions and steps taken by Hexion to abrogate the Merger Agreement, filed a complaint in Texas state court against, *inter alia*, defendant Harris and Apollo.

31.     The market for Huntsman's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Huntsman's common stock traded at artificially inflated prices during the

Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Huntsman common stock relying upon the integrity of the market price of Huntsman's common stock and market information relating to Huntsman and Hexion, and have been damaged thereby.

32. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Huntsman's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to timely disclose the material adverse facts that defendants had taken affirmative steps to determine whether they could abort the merger and abrogate the Merger Agreement and had retained the services of Duff to render an opinion that the combined entity lacked financial viability and Wachtell to draft and file a complaint.

33. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants failed to disclose the material facts that they had decided to abort the merger if possible and had taken affirmative steps to determine whether they could abort the merger and abrogate the Merger Agreement and had retained the services of Duff to render an opinion that the combined entity lacked financial viability and Wachtell to draft and file a complaint. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment that the merger would close by July 4, 2008, and plaintiff and that shareholders of Huntsman would receive at least $28 per share at the closing, thus causing the Huntsman's common stock to be overvalued and artificially inflated

10

during the Class Period. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Huntsman's common stock at artificially inflated prices, thus causing the damages complained of herein.

34. Defendants acted with scienter in that they knew Huntsman's earnings had deteriorated since the initial agreement and that on June 3 they retained Duff to render an opinion less than two weeks later based on publicly available information on Huntsman that they had decided to abort the Merger Agreement. Defendants also knew that they had retained Duff to render an opinion that the combined company lacked financial viability and that they had retained Wachtell to draft and file a complaint. The timing of events creates the overwhelming conclusion that defendants had determined to abort the merger and file suit because they filed the 50-page complaint on the very same day they received Duff's opinion letter. In addition, defendants made no effort to contact Huntsman before they filed their complaint. It strains credulity to believe that defendants could have received the Duff letter on June 18, 2008 and approved the filing of a 50-page complaint all on the same day unless they had predetermined to take these steps. This conclusion is particularly compelling because defendants were not faced with any deadline for completing the merger until July 4, 2008, had Huntsman's publicly reported financials and were aware of the deterioration of credit markets and the increasing difficulties facing companies to obtain financing for merger deals..

### Loss Causation/Economic Loss

35. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Huntsman common stock and operated as a fraud or deceit on Class Period purchasers of Huntsman

11

common stock by concealing the adverse trends in the Company's business. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Huntsman common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Huntsman common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages under the federal securities laws.

36. Defendants' false and misleading statements and omissions of material fact caused Huntsman common stock to trade at artificially inflated levels throughout the Class Period.

37. As a direct result of Defendants' announcement on June 18, 2008, the price of Huntsman common stock price fell precipitously. This drop removed the inflation from the price of Huntsman common stock causing real economic loss to investors who had purchased the Company's common stock during the Class Period.

38. The 40% decline in the price of Huntsman common stock after these disclosures came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Huntsman common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme and the subsequent significant decline in the value of Huntsman common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

39. At all relevant times, the market for Huntsman common stock was an efficient market for the following reasons, among others:

(a) Huntsman stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) as a regulated issuer, Huntsman filed periodic public reports with the SEC and the NYSE;

(c) Huntsman and Hexion, with respect to the proposed merger, regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Huntsman was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40. As a result of the foregoing, the market for Huntsman common stock promptly digested current information regarding Huntsman, Hexion and the proposed merger from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all purchasers of Huntsman common stock during the Class Period suffered similar injury through their purchase of Huntsman common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements and omissions pleaded in this complaint. To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Hexion who knew that those statements were false when made.

**COUNT I**

**Violation of Section 10(b) of the Exchange Act
and Rule 10b-5 Promulgated Thereunder
Against All Defendants**

42. Plaintiff repeats and realleges the allegations set forth as though fully set forth herein.

43. During the Class Period, Defendants disseminated false and misleading statements, and failed to disclose material facts, as alleged above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

    (a) employed devices, schemes, and artifices to defraud;

      (b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      (c)    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Huntsman common stock during the Class Period.

45. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Huntsman common stock. Plaintiff and the Class would not have purchased Huntsman common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

46. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Huntsman common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against Defendant Harris

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. Defendant Harris acted as a controlling person of Hexion within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his position a founding partner of Apollo, and Director of Hexion, Apollo's ownership, through a subsidiary, of Hexion, and participation in and/or awareness of the decision to abort the merger with Huntsman, and the

retention of Duff and Wachtell, defendant Harris had the power to influence and control and did influence and control, directly or indirectly, the decision-making and actions of Hexion with respect to the proposed merger, as alleged herein.

49. As set forth above, Hexion and Defendant Morrison each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. Defendant Harris is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendant Harris' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the common stock of Huntsman during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 15, 2008

                         **ROY JACOBS & ASSOCIATES**

By: _____
        Roy L. Jacobs (RLJ-0286)

60 East 42nd Street, 46th Floor
New York, NY 10165
Tel. (212) 867-1156
Fax (212) 504-8343
rjacobs@jacobsclasslaw.com

              and

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz (LP-7324)
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel. (212) 685-0969
Fax (212) 685-2306
lpaskowitz@pasklaw.com

              and

DEBORAH R. GROSS
ROBERT P. FRUTKIN
**LAW OFFICES BERNARD M. GROSS, P.C.**
Suite 450, Wanamaker Building
100 Penn Square East
Philadelphia, PA 19107
Telephone: 215-561-3600
Fax: 215-561-3000

**ATTORNEYS FOR PLAINTIFF**

## AFFIDAVIT OF SANDRA LIFSCHITZ

1. I, SANDRA LIFSCHITZ, have reviewed the Complaint and have authorized the filing of same;

2. I did not purchase the common stock of Huntsman Corporation, the subject of the Complaint, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title;

3. I am willing to serve as a class representation and provide testimony at deposition and trial, if necessary;

4. During the time period from May 14, 2008 through June 18, 2008, inclusive, I purchased 1,500 shares of common stock of HUNTSMAN CORPORATION on June 6, 2008 at a price of $21.4 per share. In addition, on June 19, 2008, I purchased an additional 1,000 shares at the price of $12.48 per share.

5. During the previous three years, I have not been a lead plaintiff in any securities fraud class actions.

6. I will not accept any payment for serving as a class representative beyond my pro rata share of any recovery, except as ordered or approved by the Court with respect to an award for reasonable costs and expenses (including lost wages).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of July, 2008.

*[signature]*
SANDRA LIFSCHITZ