UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


| | |
|---|---|
| SANDRA LIFSCHITZ, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 08 Civ. 6394 (RMB) |
| Plaintiff, | |
| vs. | |
| HEXION SPECIALTY CHEMICALS, INC., CRAIG O. MORRISON, and JOSHUA J. HARRIS, | |
| Defendants. | |


**LEAD PLAINTIFFS' MEMORANDUM IN
SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT,
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS,
APPROVAL OF NOTICE, AND SCHEDULING OF FAIRNESS HEARING**

## TABLE OF CONTENTS

**PAGE**

I.  FACTUAL BACKGROUND.............................................................................. 2

II.  THE SETTLEMENT ..................................................................................... 7

III.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED...... 7

    A.  The Standards for Reviewing a Proposed Settlement
        for Preliminary Approval.......................................................................... 8

    B.  Preliminary Approval of the Settlement Should be Granted ...................... 8

        1.  The Complexity, Expense and Likely Duration of the
            Litigation Supports Approval of the Settlement............................. 9

        2.  The Reaction of the Class to the Settlement................................. 10

        3.  The Stage of the Proceedings ...................................................... 10

        4.  The Risk of Establishing Liability and Damages ......................... 11

        5.  The Risks of Maintaining the Class Action Through Trial .......... 13

        6.  The Ability of Defendants to Withstand a Greater
            Judgment.................................................................................... 14

        7.  The Reasonableness of the Settlement in Light of the
            Best Possible Recovery and the Attendant Risks of
            Litigation ................................................................................... 14

    C.  Certification of a Settlement Class is Appropriate ................................... 15

        1.  The Class Satisfies the Numerosity Requirement ........................ 16

        2.  There are Questions of Law and Fact Common to the Class ....... 16

        3.  Lead Plaintiffs' Claims are Typical of the Claims of the Class ... 16

        4.  Lead Plaintiffs are Adequate Class Representative...................... 17

    D.  The Plan of Distribution of the Settlement Fund Among
        Class Members is Fair and Reasonable ................................................... 18

    E.  The Notice Program Satisfies Due Process .............................................. 19

IV.   PROPOSED SCHEDULE .................................................................. 22

V.    CONCLUSION ............................................................................. 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adair v. England*, 209 F.R.D. 5 (D.D.C. 2002) ................................................................. 16

*Amida Capital Mangement II, LLC v. Cerberus*, 2009 U.S. Dist. LEXIS 105738 (S.D.N.Y. Nov. 10, 2009) ..................................................................................... 14, 19

*Attenborough v. Construction & General Building Laborers Local 79*, 238 F.R.D. 82 (S.D.N.Y. 2006) ............................................................................................. 16

*Babcock v. Computer Associate International Inc.*, 212 F.R.D. 126 (E.D.N.Y. 2003) ............................................................................................................ 17

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................ 14

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)("*Grinnell*") ............................ 7, 8

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) .......................................... 18

*First New York Securities, L.L.C. v. United Rentals, Inc.*, 2009 U.S. Dist. LEXIS 78605 (D. Ct. Aug. 24, 2009) ....................................................................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1019 (9th Cir. 1998) ......................................... 16, 17

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) .................................................................... 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litigation*, Number MDL 1500, 02 Civ 5575(SWK), 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ........ 9, 11, 15

*In re "Agent Orange" Prod. Liability Litigation*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F. 2d 145 (2d Cir. 1987) ................................................................. 14

*In re Alloy, Inc. Sec. Litig.*, No. 03 Civ 1597 (WHP), 2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004 ....................................................................... 9, 11

*In re Crayfish Co. Sec. Litigation*, 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. 2002) ........ 17

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 228 F.R.D. 541 (S.D. Tex. 2005) ............................................................................................................ 15

*In re Gilat Satellite Networks, Ltd.*, No. 02cv1510(CPS), 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007) ................................................................... 21

*In re Global Crossing Sec. & ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004)....11, 15

*In re Independent Energy Holdings PLC Sec. Litig.*, No. 00 Civ 6690 (SAS),
2003 U.S. Dist. LEXIS 17090 ...................................................................13, 15

*In re Initial Public Offering Sec. Litigation*, 243 F.R.D. 79 (S.D.N.Y. 2007) ...................8

*In re Luxottica Group S.p.A Sec. Litig.*, No. 01cv3285(JBW)(MDG), 2005 U.S.
Dist. LEXIS 27765 (E.D.N.Y. Nov. 15, 2005)..............................................21

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK)
2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007................................21

*In re Michael Milken & Associates Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1993)..............11

*In re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99 (S.D.N.Y. 1997) ..........8

*In re Prudential Sec. Ltd. P'ships Litigation*, 164 F.R.D. 362 (S.D.N.Y. 1996)
*aff'd sub nom. In re: Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996) .....21, 22

*In re Stock Exchs. Options Antitrust Litig.,* No. 99 Civ. 0962 (RCC) MDL No.
1283, 2006 U.S. Dist. LEXIS 87825 (S.D.N.Y. Dec. 4, 2006) ...................19

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004) ......................14

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973) .........................................................11

*Marisol A. ex. Rel. Forbes v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd*,
126 F.3d 372 (2d Cir. 1996) ................................................................16, 17

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ........................................................15

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456
(S.D.N.Y. 2005)......................................................................................16

*Ribidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ..............................................16

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) .......................16

*Staton v. Boeing Co.*, 313 F.3d 465 (9th Cir. 2002) ..........................................17

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................9

*Weigner v. City of New York*, 852 F.2d 646 (2d Cir. 1988) ...............................21

iv

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1983).......................................................19

## STATE CASES

*Hexion Specialty Chemical Inc., et al. v. Huntsman Corp.*, 965 A.2d 715 (Dela. Ch. Sept. 29, 2008) ...........................................................................................................4

## DOCKETED CASES

*Huntsman Corp. v. Credit Suisse Securities (USA) (LLC) and Deutsche Bank Securities Inc.*, Cause No. 08-09-09258 (the "Texas Litigation")................................6

*Huntsman, Hexion Specialty Chemicals Inc. v. Huntsman Corp.*, Civil Action No. 3841-VCL (the "Delaware Litigation") ........................................................................4

## FEDERAL STATUTES

15 U.S.C. §78u-4(a)(7)(A) .................................................................................................20

Fed. R. Civ. P. 23 (a)(1) ....................................................................................................15

Fed. R. Civ. P. 23 (a)(4) ....................................................................................................17

Fed. R. Civ. P. 23(a)(2) .....................................................................................................16

Fed. R. Civ. P. 23(a)(3) .....................................................................................................16

This Class Action ("Action") arises out of the failed merger (the "Merger") between defendant Hexion Specialty Chemicals, Inc. ("Hexion") and Huntsman Corp. ("Huntsman"). Lead Plaintiff Sandra Lifschitz filed a complaint on behalf of all persons or entities who purchased the common stock or call options, or who sold put options, of Huntsman between May 14, 2008 and June 18, 2008, inclusive. Defendants are Hexion, Craig O. Morrison ("Morrison"), Hexion's Chief Executive Officer and Chairman, and Joshua J. Harris ("Harris"), a Director of Hexion.[1] Lead Plaintiffs allege that Defendants violated Sections 10(b) and 20 the Securities Exchange Act of 1934 (the "Exchange Act") by making false and misleading statements and failing to disclose material facts concerning the Merger during the Class Period.

The Settlement provides for a cash payment of $18,000,000 for the benefit of the Class to resolve the Action against all Defendants. The Settlement is contained in a Stipulation of Settlement dated December  , 2009 (the "Stipulation"), submitted herewith as Exhibit 1.

The Settlement is fair, reasonable and adequate under the governing standards in this Circuit and warrants preliminary approval by this Court.

## I.    FACTUAL BACKGROUND

The Merger was announced on July 12, 2007. Pursuant to the Merger Agreement, Hexion contracted to purchase all of the common stock of Huntsman for $28 per share, in cash. The financing for the acquisition was to be provided by two banks which had signed a commitment letter on July 11, 2007. The original closing date for the Merger was April 5, 2008. By agreement, the closing was rescheduled for July 2008.

However, on June 18, 2008, after the close of the market, Hexion filed a lawsuit against

---

[1] Hexion is not a public company. It is owned by Apollo Global Management, LLC ("Apollo"). Defendant Harris is a co-founder of Apollo.

Huntsman in Delaware Chancery Court seeking, *inter alia*, a declaration that Hexion was not obligated to consummate the Merger because the combined entity would be insolvent. Hexion also issued a press release on June 18, 2008, stating that the financing for the Merger would not be available due to the insolvency of the combined entity and published an insolvency opinion it had received from Duff & Phelps, Inc ("Duff").

Defendants' actions on June 18, 2008, had a substantial impact on the market price of Huntsman common stock, which had been trading in the $18 to $19 range prior to June 18, 2008. On June 18, 2008, the closing price of Huntsman common stock was $19.08. On June 19, 2008, Huntsman common stock closed at $11.76, on volume of 42 million shares, greatly in excess of the average daily volume preceding the events of June 18, 2008.

This Action was filed on July 17, 2008. The complaint alleges that by May 14, 2008, the date Defendants issued a Press Release and Form 10-Q for the quarter ended March 31, 2008, containing, *inter alia*, statements concerning the Merger, Defendants had made the decision to walk away from the Merger and had taken, and continued to take throughout the Class Period, concrete and active steps to walk away from the Merger. The complaint alleges that defendants did not disclose these material facts and misrepresented their efforts to close the Merger until June 18, 2008.

The notice required by the Private Securities Litigation Reform Act of 1995 ("PSLRA") was published on July 17, 2008. On August 25, 2008, the initial Plaintiff, Sandra Lifschitz, entered into a stipulation with Defendants adjourning the date for their response to the complaint until a date after the appointment of lead counsel pursuant to the PSLRA. All motions for appointment of lead plaintiff were due by September 15, 2008. At the request of counsel for Defendants, the Court adjourned the initial pre-trial conference to October 16, 2008.

On September 15, 2008, Sandra Lifschitz and Robert Burch filed their motion for appointment as lead plaintiffs. A competing motion was filed by Steve Stilliard, a shareholder-employee of Huntsman. Defendants and the competing movants for appointment as lead plaintiff entered into a stipulation and proposed order scheduling the time for filing a consolidated amended complaint and responses thereto. The Court entered the Order, with certain changes to the schedule, on October 15, 2008.

After considerable briefing by the competing movants for lead plaintiff, the Court, on February 17, 2009, entered an Order appointing Sandra Lifschitz and Robert Burch Lead Plaintiffs and affirming their choice of Lead Counsel, Law Offices Bernard M. Gross, P.C. Stilliard filed a motion for reconsideration which Lead Plaintiffs opposed in a brief filed March 11, 2009. By Order dated March 19, 2009, the Court denied the motion for reconsideration.[2]

During this period of time, Lead Plaintiffs had been actively monitoring Hexion's lawsuit against Huntsman, *Hexion Specialty Chemicals Inc. v. Huntsman Corp.*, Civil Action No. 3841-VCL (the "Delaware Litigation"), in the Delaware Chancery Court, which culminated in a trial commencing September 8, 2008. On September 29, 2008, after six days of trial, Vice Chancellor Lamb issued his Opinion, finding, *inter alia*, that Hexion had intentionally breached the Merger Agreement and that damages for the breach were not capped by the liquidated damages provision in the Merger Agreement. *Hexion Specialty Chemical Inc., et al. v. Huntsman Corp.*, 965 A.2d 715 (Dela. Ch. Sept. 29, 2008). Lead Plaintiffs had representatives in the courtroom during the trial. In addition, after negotiation of a Stipulation and Protective Order of Confidentiality, entered by the Court on April 13, 2009, Lead Plaintiffs secured from Defendants access to the

---

[2] Stilliard then filed a petition for a writ of mandamus which was denied by order of the Second Circuit Court of Appeals on June 10, 2009.

non-public trial exhibits from the Delaware litigation and Lead Plaintiffs reviewed thousands of pages of documents. In addition, Lead Plaintiffs obtained the transcripts of the trial testimony of all of the witnesses in the Delaware litigation. Lead Plaintiffs also continued their investigation of the allegations of the complaint.

Additional litigation concerning this failed Merger was filed in Texas State Court in September, 2008, Civil Action No. 08-09-09258-CV, styled *Huntsman Corp. v. Credit Suisse Securities (USA) (LLC) and Deutsche Bank Securities Inc.* (the "Texas Litigation"). This litigation went to trial in June 2009, and Lead Plaintiffs had representatives in the courtroom during the trial. This litigation was settled after the first week of trial.

On March 4, 2009, Lead Counsel and counsel for Defendants appeared for a status conference. The Court was advised that the parties had determined to explore the possibility of a settlement of the Action through the offices of a mediator. The Court, giving the parties time to schedule and attend the mediation, set the next status for May 11, 2009, at which time a date for the filing of the consolidated amended complaint would be determined.

The parties agreed upon the mediator, a retired United States District Judge, and scheduled the mediation for May 27, 2009, in California. At the request of the mediator, the parties filed memoranda supporting their legal and factual positions and reply memoranda addressing each other's positions. The parties also submitted documentary exhibits to the mediator. In connection with the mediation, Lead Plaintiffs consulted with experts on damages. At the all-day mediation, the parties engaged in a very spirited discussion of the claims and defenses. As the day wore on, it became apparent that the parties would not be able to bridge the gulf between their assessments of the value of the case for settlement purposes. The major and overriding obstacle was rooted in the factual issue as to when Defendants had made a sufficient

determination to change their position with respect to the merger such that disclosure was required. In addition, damages were a major obstacle as the parties had significantly different views on both the volume of shares traded during the Class Period and the amount of damage sustained per share traded. It became evident that without additional discovery, the parties would not be able to resolve the litigation.

Accordingly, Lead Plaintiffs and Defendants agreed, subject to the existing Confidentiality Order, to provide Lead Plaintiffs with the opportunity for additional discovery, despite the prohibition on discovery imposed by the PSLRA. Through a series of demands, Lead Plaintiffs were able to review additional documents which Defendants produced, including non-public transcripts of depositions from the Delaware lawsuit and the then-pending Texas Litigation. In addition, Lead Plaintiffs deposed two key witnesses, Colleen Nissl, in-house counsel for Hexion, and Scott Kleinman, a Director of Hexion who is also a partner of Apollo.

As a result of the additional discovery, Lead Plaintiffs gained a sharper understanding of the factual nuances of the events that occurred before and during the Class Period and, consequently, of the strengths and weaknesses of their claims and Defendants' defenses. In addition, counsel for the parties met on several occasions to discuss further the facts and the legal issues in an effort to settle the Action. In the context of those settlement discussions, the parties exchanged information developed by their damage experts and further analyzed the potential damages allegedly sustained by the Class, depending upon different factual scenarios based on when disclosure might have been required and the volume of shares actually traded during the Class Period.

After a long and arduous process during which they were able to obtain a firm understanding of the strengths and weaknesses of the claims and defenses, the parties were able

to reach the Settlement which is now before the Court for preliminary approval.    That knowledge, aided by the mediation process, enabled Lead Plaintiffs to reach a settlement which they believe is fair, reasonable and adequate.    Lead Counsel respectfully requests that the Court grant preliminary approval and enter the order negotiated by the parities and attached as Exhibit "A" to the Stipulation.

## II.    THE SETTLEMENT

The proposed Settlement now before the Court provides for a cash fund of Eighteen Million Dollars ($18,000,000.00), plus interest earned thereon (the "Settlement Fund") for the benefit of those persons entities who purchased the common stock or call options, or sold put options of Huntsman between May 9, 2008 and June 18, 2008, inclusive ("Class").    Defendants will obtain a release of the Released Claims as to themselves and to all Released Persons as those terms are defined in the Stipulation.

## III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

As discussed herein, the Settlement provides for a substantial cash payment for the benefit of Lead Plaintiffs and the Class and, in light of the strengths and weaknesses of the claims and defenses and the time, cost and risk of continued litigation is fair, reasonable and adequate.    Accordingly, Lead Plaintiffs respectfully submit that an analysis of the factors set forth in *Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)("*Grinnell*"), which apply to a court's determination of final approval of a class action settlement, supports preliminary approval of this Settlement.

### A.    The Standards for Reviewing a Proposed Settlement for Preliminary Approval

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Public Offering Sec. Litig.,* 243 F.R.D. 79, 87 (S.D.N.Y. 2007).  In the preliminary approval process, the Court "review[s] the proposed terms of settlement and make[s] a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Id.*  Courts typically grant preliminary approval when "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Nasdaq Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  The proposed Settlement Agreement meets each of these four tests and so the Court should preliminarily approve the Agreement.

### B.    Preliminary Approval of the Settlement Should be Granted

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement funding light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell,* 495 F.2d at 463.

### 1.    The Complexity, Expense and Likely Duration of the Litigation Supports Approval of the Settlement

The complexity, expense and likely duration of  continued litigation of this securities fraud class action supports the reasonableness of settling the Action at this time. *See, e.g., Hicks v. Morgan Stanley & Co.,* No. 01 Civ. 10071 (RJH*), * 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc., Sec. Litig.,* No. 03 Civ 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004)(approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"). *See also In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* No. MDL 1500, 02 Civ 5575(SWK), 2006 U.S.Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006)(due to their "notorious complexity, securities class actions litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials")

The Action presents complex legal and factual issues under the federal securities laws which would require extensive deposition and trial testimony of both fact and expert witnesses. The underlying proposed merger between Huntsman and Hexion requires a firm understanding of the specialty chemicals market, the prospects for the business of the combined entity and the condition of the financial and capital markets prior to and during the Class Period, all of which influenced Defendants' decision-making with respect to the proposed merger.   Trial of the Action, with the probability of appeals, would be would be complicated, time-consuming and expensive.  The Settlement offers the Class a substantial monetary recovery now, at a greatly reduced cost, for the benefit of the Class. *See Strougo v. Bassini,* 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003)("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more

risks . . . and would, in light of the time, value of money, make future recoveries less valuable than this current recovery").

### 2.    The Reaction of the Class to the Settlement

This factor is not applicable at the preliminary approval stage because notice has not yet been mailed to the members of the Class.

### 3.    The Stage of the Proceedings

As set forth above, although the Action has not proceeded to the motion stage or to full-blown discovery, the discovery obtained and taken by Lead Plaintiffs, the mediation process and the extensive work with expert consultants have enabled Lead Plaintiffs to develop an understanding of the strengths and weaknesses of the claims and defenses that is often not achieved until summary judgment in the ordinary case.

This knowledge is based on Lead Counsel's extensive investigation and discovery, including, *inter alia:* (i) review of Huntsman's and Hexion's SEC filings, press releases, and other public statements; (ii) review of media reports about Huntsman and Hexion and the specialty chemicals market; (iii) attendance at the trials in the Delaware Litigation and the Texas Litigation; (iv) analysis of transcripts of deposition and trial testimony from the Delaware Litigation and the Texas Litigation; (v) analysis of thousands of documents produced in the Delaware Litigation and Texas Litigation; (vi) depositions of Scott Kleinman and Colleen Nissl; (vii) consultation with experts; (viii) research of the applicable law, particularly disclosure obligations in the context of pending mergers; (ix) preparation of the mediation brief and participation in the mediation; and (ix) negotiation with Defendants.

In sum, by the time the parties entered into the Stipulation, Lead Counsel was extremely knowledgeable of the issues in the Action and the strengths and weaknesses of the claims and

defenses. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)("the question is whether the parties had adequate information about their claims").

### 4.    The Risk of Establishing Liability and Damages

Securities class actions typically present significant hurdles for plaintiffs to overcome in proving liability and damages. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *6 (finding that issues present in securities action presented significant hurdles to proving liability); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53(S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'")(quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)).

This Action also presented Lead Plaintiffs with difficult and contested issues of liability and damages.  While Lead Plaintiffs believe that they could present sufficient evidence to a jury to enable them to find for Lead Plaintiffs on liability, there are significant factual and legal issues that would pose a significant risk to Lead Plaintiffs in proving their claims.  Defendants have articulated defenses to Lead Plaintiffs' allegations that could be accepted by the Court or jury. Among other things, Defendants argue that Lead Plaintiffs could not establish any duty on the part of Defendants to disclose their intention to withdraw from the Merger until June 18, 2008, the date the Hexion Board, upon the advice of counsel and expert consultants who presented their findings and conclusions to the Board, voted to file the complaint in the Delaware Litigation.  Lead Plaintiffs also face the serious risk that they would not be able to discover all of the critical facts surrounding certain of Defendants' decisions and actions because many of the conversations and meetings were attended by counsel and Defendants have invoked the attorney-

client privilege to avoid the risk of waiver.  At the Kleinman deposition, for example, the witness was instructed not to answer certain relevant questions because to do so would invade the attorney-client privilege.  Although Lead Plaintiffs believe that they have good arguments for piercing that privilege, their success is far from assured.  In addition, proof of scienter posed a significant hurdle for many of the same reasons.  The issue of duty to disclose and scienter are intertwined in this case, perhaps to a greater degree than in the typical securities fraud suit.  The discovery did not reveal a bright line as to when Defendants had made a decision with respect to the proposed merger such that disclosure, under the prevailing law, required disclosure. Defendants firmly stated, in discovery, and in the mediation, that until the Hexion Board voted on June 18, 2008, no firm decision to change their position with respect to the proposed merger had been made.  Discovery has shown that, throughout the Class Period, Defendants were taking steps to proceed to close the proposed merger at the same time as they were considering the solvency of the combined entity.

Lead Plaintiffs' ability to prove sizeable damages also presented somewhat unique hurdles.  Lead Plaintiffs believed that they could readily prove the materiality of, and the causal connection between the market price for Huntsman common stock and the decision of Hexion to walk away from the merger.  However, numerous issues were present which, based on the jury's acceptance of the various and competing expert opinions, could dramatically impact the amount of damages Lead Plaintiffs could prove.  For example, there was the incontrovertible fact that the range of market prices of Huntsman common stock during the Class Period, $21 - $22, was significantly below the $28 offering price by Hexion.  This could readily lead experts to conclude that the market had seriously begun to question whether the merger would close.  In addition, the volume of trading in Huntsman common stock raised certain issues impacting the

number of shares traded during the Class Period. Among those issues were the presence of institutional traders engaging in arbitrage and the after-hours market on the last day of the Class period when the trading volume saw a significant spike. If the volume on June 18, 2008, were reduced by after-hours trading volume, as Defendants and their expert argue occurred, by which time the market knew of the decision by Defendants to walk away from the proposed merger, the shares available to participate in the Class Period would be significantly reduced. These and other issues related to damages would lead the parties' experts to offer competing testimony as to the amount of damages. A jury would have to then choose from among those opinions. Thus, Lead Plaintiffs faced a significant risk in proving damages. *See In re Indep. Energy Holdings PLC Sec. Litig.,* No. 00 Civ 6690 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11 -*12 (S.D.N.Y. Sept. 29, 2003)(noting difficulty of proving damages in securities cases).

## 5.    The Risks of Maintaining the Class Action Through Trial

While Defendants were expected to challenge the suitability of the Class and of the Lead Plaintiffs, Lead Plaintiffs do not believe that those expected challenges posed serious risks. As to the Class Period, Lead Plaintiffs also believe it too is proper. While the Class Period in the initial complaint began with Hexion's press release and SEC Form 10-Q on May 14, 2008, on May 9, 2008 Huntsman issued a press release disclosing its earnings and providing a general update on the Merger. On this same date, Apollo met with its legal counsel to discuss whether a Material Adverse Event had occurred under the terms of the Merger agreement. As noted in the Delaware Opinion, "after May 9, 2008, Apollo and its counsel began to follow a carefully designed plan to obtain an insolvency opinion, publish that opinion (which it knew, or reasonably should have known, would frustrate the financing), and claim Hexion did not 'knowingly and intentionally' breach its contractual obligations to close [on the Proposed

13

merger] due to the impossibility of obtaining financing without a solvency certificate)." 965 A.2d at 725. Thus, there is an issue as to when Defendants' disclosure duties, if indeed they had any, arose.[3]  Therefore, for settlement purposes, the parties have agreed to a Class Period for settlement, starting on May 9, 2008 and ending on June 18, 2008.

### 6.    The Ability of Defendants to Withstand a Greater Judgment

Although the Court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, it is not generally one of the determining factors. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 538 (3d Cir. 2004)(affirming district court's finding that DuPont's ability to pay more was irrelevant to assessment of settlement).  Here, Lead Counsel does not know whether Defendants' financial resources can withstand a judgment larger than the settlement amount, but whether they can or not, should not be relevant here. Courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and in fact, the ability of defendants to pay more money does not render a settlement unreasonable.  *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir. 2001); *Warfarin,* 391 F.3d at 538.

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.,* 597 F. Supp. 740,

---

[3] Recently, two different courts faced with a different failed merger situation, dismissed complaints where they failed to plead specific facts to suggest that the acquiring party did not intend to carry out the merger. *See Amida Capital Management II, LLC v. Cerberus,* 2009 U.S. Dist. LEXIS 105738 (S.D.N.Y. Nov. 10, 2009); *First New York Securities, LLC v. United Rentals, Inc.,* 2009 U.S. Dist. LEXIS 78605 (D. Ct. Aug. 24, 2009).

762 (E.D.N.Y. 1984), *aff'd*, *818 F. 2d 145 (2d Cir. 1987)*.   The court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in this context of the legal and practical obstacles to obtaining a large recovery"); *Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *12-*13 (noting few cases tried before a jury result in full amount of damages claimed).   In addition, in considering the reasonableness of the Settlement, the court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See AOL Time Warner,* 2006 U.S. Dist. LEXIS 17588, at *44 (where settlement fund in escrow earning interest "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Here, as set forth above, the Settlement is well within the range of reasonableness.   As the court said in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, "[t]he settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." 228 F.R.D. 541, 566 (S.D. Tex. 2005).

### C.    Certification of a Settlement Class is Appropriate

Lead Plaintiffs believe the Action satisfies all of the perquisites for class certification under Rule 23(a) and Rule 23(b) Fed. R. Civ. P.   The proposed class is defined as:

> All persons or entities who purchased the common stock or call options or sold put options, of Huntsman between May 9, 2008 and June 18, 2008, inclusive (the "Class Period").

Lead Plaintiffs are adequate representatives of the settlement Class, having already been appointed Lead Plaintiffs.

### 1.    The Class Satisfies the Numerosity Requirement

Fed. R. Civ. P. 23 (a)(1) requires that the class be "so numerous that joinder of all members is impracticable." A precise number is unnecessary so long as plaintiffs provide a reasonable basis for their estimate. *Attenborough v. Constr. & Gen. Bldg. Laborers Local 79*, 238 F.R.D. 82, 94(S.D.N.Y. 2006); *Adair v. England*, 209 F.R.D. 5, 8 (D.D.C. 2002). "Numerosity is presumed when a class consists of forty or more members." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005). Here, as alleged in the complaint, and as refined with experts during the mediation and settlement process, there were millions of shares traded during the Class Period. There can be no doubt that the number of class members is sufficient to make joinder impracticable.

### 2.    There are Questions of Law and Fact Common to the Class

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." This standard is satisfied if there is even one common question of fact or law. *Marisol A. ex. Rel. Forbes v. Giuliani*, 929 F. Supp. 662, 690-91 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997). As is evident from the discussion above, virtually all of the issues of act and law are common to the Class.

### 3.    Lead Plaintiffs' Claims are Typical of the Claims of the Class

Fed. R. Civ. P. 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Ribidoux v. Celani*, 987 F.2d 931, 936

(2d Cir. 1993). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.* , 150 F.3d 1019, 1020(9th Cir. 1998).

Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F. 2d 590, 598 (2d Cir. 1986); *Babcock v. Computer Assoc. Int'l. Inc.*, 212 F. R. D. 126, 130 (E.D.N.Y. 2003). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. See *In re Crayfish Co. Sec. Litig*, 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. 2002).

Here Lead Plaintiffs purchased common stock and sold put options. Thus, the claims of all Class members are the same as the claims of the Lead Plaintiffs. All of the claims are based on the same set of facts and raise the same causes of action against Defendants. Thus, Lead Plaintiffs believe typicality is present. Lead Plaintiffs also believe, however, that if the Settlement is not approved, Defendants intend to challenge this conclusion.

### 4.    Lead Plaintiffs are Adequate Class Representative

Fed. R. Civ. P. 23 (a)(4)  requires that "the representative parties will fairly and adequately protect the interests of the class." Two criteria for determining the adequacy of representation are generally recognized: "First, the Court must determine whether class counsel is qualified, experienced, and generally able to conduct the litigation. …Next, the Court must establish that the proposed class members do not have interests antagonistic to one another."

*Marisol A.*, 929 F. Supp at 692; *see also Staton v. Boeing Co.,* 313 F.3d 465,466 (9th Cir. 2002), citing *Hanlon,* 150 F.3d at 1020.

Lead Counsel, who have been approved by the Court, have significant experience in securities class actions and have successfully conducted the Action, culminating in the Settlement.

Lead Plaintiffs, themselves, have been appointed by the Court, on a disputed motion. Their interests are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between their respective interests. Lead Plaintiffs share common questions of law and fact with the members of the Class and their claims are typical of the claims of other class members. Again, Defendants are likely to challenge this if the Settlement is not approved.

### D.    The Plan of Distribution of the Settlement Fund Among Class Members is Fair and Reasonable

The plan of distribution of the settlement fund among class members is fair and reasonable.[4] For both the common stock and the options, recovery is provided only to those class members who purchased common stock or call options, or sold, in the case of put options, during the Class Period and continued to hold the security until the end of the Class Period. The basis for this limitation is rooted in the opinion in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), because Class members who sold their stock before disclosure of the alleged fraud on June 18, 2008, do not have legally cognizable losses.

For purchasers of common stock who continued to hold their shares at the close of

---

[4] The plan of allocation of the settlement fund among class members is not a term of the Settlement. Thus, it can be changed at final approval without any impact on the viability of the Settlement.

trading on June 18, 2008, their recognized loss shall be their purchase price less $12.86, the closing price of Huntsman common stock on June 19, 2008. For call option purchasers who continued to hold their options at the close of trading on June 18, 2008, their recognized loss shall be their purchase price of the option less the closing price of the call option at the close of trading on June 19, 2008. For sellers of put options who continued to hold those options at the close of trading on June 18, 2008, their recognized loss shall be the price of the option as of the close of trading on June 19, 2008, less the price they received on the date of sale of the put option. The recognized loss is calculated excluding commissions.

Additionally, Class Members who purchased common stock or call options or sold put options from May 9-13, 2008 their recognized loss will be 20% of the aforementioned calculation of recognized loss.[5] A Class Member's recovery will then be calculated as the ratio of the number of shares (or call options) purchased (or sold in the case of put options) by the Class member to the aggregate number of shares and options filed by all Class Members times the net settlement fund. In other words, each Class member will receive his *pro rata* share of the Net Settlement Fund based upon his recognized loss and the aggregate recognized loss of all Class members.

### E.    The Notice Program Satisfies Due Process

Attached to the Stipulation are the Notice to the Class, the Summary Notice, and the Proof of Claim and Release. *See* Exhibits A-1, A-2 and A-3. The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed

---

[5] This 20% value is based on the information uncovered to date in connection with the fact that May 9 was the date of the filing by Huntsman of its earnings release and whether defendants had any disclosure duties under the federal securities laws with respect to the Huntsman release is "ambivalent." *See Amida Capital Mangement*, 2009 U.S. Dist. LEXIS, *11-18.

settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Antitrust Litig.,* No. 99 Civ. 0962 (RCC) MDL No. 1283, 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006). *See also Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1983)(the settlement notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" (citation omitted).

Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per-share basis, (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree, (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share bases), and a brief explanation supporting the attorneys fees and costs sought,[6] (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class, (v) a brief statement explaining the reasons why the parties are proposing the settlement, and (vi) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-1 to the Stipulation. The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to exclude

---

[6] The Notice informs Class Members that Lead Counsel will seek a fee not to exceed 25 % of the Settlement and expenses not to exceed $100,000.

themselves from the Settlement, or to object to the Settlement and Lead Counsel's request for attorneys fees and expenses. Furthermore, the Notice provides recipients with the contact information for the Claims Administrator, Valley Forge Administrative Services, and Lead Counsel.

The Notice will be mailed to all persons who appear on the transfer records of Huntsman, as well as mailed or emailed to a master list of hundreds of institutions and other nominees who typically hold securities on behalf of beneficial owners. Thereafter, the Claims Administrator will mail the Notice to any beneficial owner whose name and address is supplied to him.

The Summary Notice, Exhibit A-3 to the Stipulation is a short form notice of the proposed settlement with instructions to contact the Claims Administrator to obtain the Notice. The Summary Notice will be published once by PRNewswire for dissemination over the internet. This is the same manner in which the PSLRA-mandated notice of the filing of the Action was disseminated and this method of publication has been approved by other courts.

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause of the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK) 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Feb. 1, 2007). It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id.* at *27(citing *Weigner v. City of New York*, 852 F.2d 646, 649(2d Cir. 1988). In fact, notice programs such as the one proposed by Lead Counsel have been approved as adequate under Due

Process and Rule 23 in a multitude of class action settlements. *See, e.g., In re Gilat Satellite Networks, Ltd.,* No. 02cv1510(CPS), 2007 U.S. Dist. LEXIS 29062, at *41-*42(E.D.N.Y. Apr. 19, 2007)(Approving proposed notice program where notice mailed to shareholders of record listed on transfer records and to "more than 2,500" of the largest banks, brokerages, and other nominees); *In re Luxottica Group S.p.A Sec. Litig.,* No. 01cv3285(JBW)(MDG), 2005 U.S. Dist. LEXIS 27765, at *4 - *5 (E.D.N.Y. Nov. 15, 2005)(approving notice program, consisting of broker mailing and summary notice publication in *The Wall Street Journal* and *The New York Times)*; *In re Prudential Sec. Ltd. P'ships Litig.,* 164 F.R.D. 362, 368 (S.D.N.Y. 1996)(approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. In re: Prudential Sec. P'ship Litig.,* 107 F.3d 3 (2d Cir. 1996).

## IV.    PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, the parties respectfully submit the following procedural schedule for the Court's review:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Mailing the Notice and Proof of Claim and Release form to Class Members (the "Notice Date") | 10 days after receipt of list from Transfer Agent |
| Publishing the Summary Notice on PR Newswire | 25 days after the Preliminary Order |
| Filing Proof of Claim and Release forms | 90 days after mailing of Notice |
| Filing of Request for exclusion requests or objections | 14 days before the Settlement Hearing |
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, or in support of Lead Counsel's application for an award of attorney's fees and expenses | 10 days before the Settlement Hearing |
| Settlement Hearing | No less then 90 days following execution of the Preliminary Order or later at the Court's convenience |

## V.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Order in connection with the Settlement proceedings, which will provide: (i) preliminary approval of the Settlement and the Class; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

Dated:  12|9/09

LAW OFFICE BERNARD M GROSS, P.C.
BY:

**DEBORAH R. GROSS**
Suite 450, Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215-561-3600
Fax:  215-561-3000

Lead Counsel for Lead Plaintiffs