## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ X
                                                       :
SANDRA LIFSCHITZ, Individually and on                  :
Behalf of All Others Similarly Situated,               :    Civil Action No.
                                                       :
                              Plaintiff,               :    08 Civ. 6394 (RMB)
                                                       :
        vs.                                            :
                                                       :
HEXION SPECIALTY CHEMICALS,                            :    STIPULATION OF SETTLEMENT
INC., CRAIG O. MORRISON, and                           :
JOSHUA J. HARRIS,                                      :
                                                       :
                              Defendants.              :
------------------------------------------------------ X
```

This Stipulation of Settlement dated December 9, 2009 (the "Stipulation"), embodies a settlement (the "Settlement") made and entered into by and among the following Settling Parties: (i) the Lead Plaintiffs (on behalf of themselves and each of the members of the Class), and (ii) the Defendants, by and through their counsel of record in the above-referenced class action litigation pending in the United States District Court for the Southern District of New York (the "Action"). The Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims, as defined in ¶1.25 below, against the Released Persons, as defined in ¶1.27 below, upon and subject to the terms and conditions hereof and subject to the approval of the Court.

## I.    THE LITIGATION

On July 17, 2008, the Action was filed in the United States District Court for the Southern District of New York (the "Court") as a putative securities class action on behalf of all persons who purchased the common stock of Huntsman Corp. ("Huntsman") between May 14, 2008 and June 18, 2008, inclusive, and were damaged thereby.

On February 17, 2009, Sandra Lifschitz and Robert Burch were appointed Lead Plaintiffs, and the firm of Law Offices Bernard M. Gross, P.C. was appointed Plaintiffs' Lead Counsel. The complaint alleges on behalf of the Class violations of §§10(b) and 20 of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

## II.    CLAIMS OF THE LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Lead Plaintiffs believe that the claims asserted in the Action have merit and that the evidence developed to date supports the claims.  Plaintiffs' Lead Counsel's investigation included: (i) review of Huntsman's and Hexion's filings with the Securities and Exchange Commission ("SEC"), press releases, and other public statements; (ii) review of media reports about Huntsman

and Hexion; (iii) attendance at the trial in Delaware Chancery Court in *Hexion Specialty Chemicals Inc. v. Huntsman Corp.*, Civil Action No. 3841-VCL (the "Delaware Litigation") and in Texas District Court, Montgomery County in *Huntsman Corp. v. Credit Suisse Securities (USA) (LLC) and Deutsche Bank Securities Inc.*, Cause No. 08-09-09258 (the "Texas Litigation"); (iv) review of transcripts of depositions taken in the Delaware Litigation and Texas Litigation; (v) review of thousands of documents produced in the Delaware Litigation and Texas Litigation; (vi) depositions of Scott Kleinman and Colleen Nissl; and (vii) expert consultations.  However, Plaintiffs' Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Defendants through trial and through appeals.  Plaintiffs' Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation.   Plaintiffs' Lead Counsel also are mindful of possible defenses to the securities law violations asserted in the Action.  Plaintiffs' Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Class.  Based on their evaluation, Plaintiffs' Lead Counsel have determined that the Settlement set forth in the Stipulation is in the best interests of the Lead Plaintiffs and the Class.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Defendants have denied and continue to deny each and all of the claims and contentions alleged in the Action.  The Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action.  The Defendants also have denied and continue to deny, *inter alia*, the allegations that Hexion's public disclosures were deficient in any respect, that any additional disclosure was necessary, that the price of Huntsman's publicly traded

3

stock was artificially inflated by reason of alleged misrepresentations or non-disclosures by Defendants, and that the Lead Plaintiffs or the Class have suffered any damage.

Nonetheless, the Defendants have concluded that further conduct of the Action would be protracted, time-consuming, expensive and distracting. The Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action. The Defendants have, therefore, determined that it is desirable and beneficial to them that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Lead Plaintiffs (for themselves and the members of the Class) and the Defendants, by and through their respective undersigned counsel or attorneys of record, that, subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Action and the Released Claims as against the Released Persons shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows:

### 1.    Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1    "Administrative Expenses" means all the costs and expenses reasonably and actually incurred in connection with publishing, printing and mailing to Class Members the Notice and the Proof of Claim, locating Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing the Proof of Claim and Release forms.

4

1.2     "Authorized Claimant" means any member of the Class whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.3     "Claims Administrator" means the firm of Valley Forge Administrative Services.

1.4     "Class" means all persons or entities who purchased the common stock or call options or sold  put options, of Huntsman between May 9, 2008 and June 18, 2008, inclusive (the "Class Period"), which Class shall be certified for settlement purposes only (the "Settlement Class").  The Class shall exclude:

(a)     Persons or entities who submit valid and timely requests for exclusion from the Class; and

(b)     Defendants, members of the immediate family of any such Defendant, any entity which has or had a controlling interest in any Defendant or in which any Defendant has or had a controlling interest, their respective officers and directors, Apollo Global Management, LLC ("Apollo Global"), any partner of or person or entity affiliated with Apollo Global, including, without limitation, any fund established by Apollo and/or any person or entity who invested in such fund (Apollo Global and all such partners, persons, entities and funds being collectively referred to as "Apollo"), Huntsman Corp., Jon M. Huntsman, Peter R. Huntsman Family Holdings Company LLC, The Jon and Karen Huntsman Foundation, Karen H. Huntsman Inheritance Trust, Huntsman Financial Corporation, Brynn B. Huntsman, as Custodian under The Utah Uniform Transfers to Minors Act, for the benefit of Rebecca Brynn Huntsman, Rachel Brynn Huntsman, Caroline Brynn Huntsman, Amber Brynn Huntsman, Virginia Brynn Huntsman, and James B. Huntsman, Credit Suisse Securities LLC, and Deutsche Bank Securities, Inc., and officers, directors, legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person.

1.5    "Class Member" means a Person who falls within the definition of the Class as set forth in ¶ 1.4 of this Stipulation.

1.6    "Class Period" means the period commencing on May 9, 2008 through and including June 18, 2008.

1.7    "Defendants" means Hexion Specialty Chemicals, Inc. ("Hexion"), Craig O. Morrison ("Morrison"), and Joshua J. Harris ("Harris").

1.8    "Defendants' Counsel" means the law firms of Paul Weiss Rifkind Wharton & Garrison LLP and Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.

1.9    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 7.1 of the Stipulation have been met and have occurred.

1.10    "Escrow Agent" means the Court Registry Investment System ("CRIS").

1.11    "Final" means when the last of the following with respect to the Judgment approving the Settlement, in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, the determination of that motion or appeal in such a manner as to permit the consummation of the Settlement, in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other writ that may be filed in connection with the approval of this Settlement, but shall not include any appeal which concerns only the issue or amount of attorneys' fees and expenses or any Plan of Distribution of the Settlement Fund.

1.12    "Gross Settlement Amount" means the amount of Eighteen Million Dollars ($18,000,000.00) cash.

1.13    "Gross Settlement Fund" means the Gross Settlement Amount plus all interest earned thereon.

1.14    "Individual Defendants" means Morrison and Harris.

1.15    "Judgment" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, in the form attached hereto as Exhibit B.

1.16    "Lead Plaintiffs" means Sandra Lifschitz and Robert Burch.

1.17    "Net Settlement Fund" means Gross Settlement Fund less payment of Administrative Expenses, Taxes and Tax Expenses and Plaintiffs' Counsel's attorneys' fees and expenses as may be awarded by the Court.

1.18    "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, Settlement Hearing and Application for Attorneys' Fees and Expenses, which is to be sent to Class Members substantially in the form attached hereto as Exhibit A-1.

1.19    "Order for Notice and Hearing" means the proposed order entitled "Preliminary Order in Connection with Settlement Proceedings," which, among other things, preliminarily approves the Settlement, certifies the Class and directs notice to the Class, substantially in the form attached hereto as Exhibit A.

1.20    "Person" means an individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and his, her or its spouses, heirs, predecessors, successors, representatives, or assignees.

1.21    "Plaintiffs' Lead Counsel" means Law Offices Bernard M. Gross, P.C., Suite 450, Wanamaker Building, 100 Penn Square East, Philadelphia, Pennsylvania 19107.

1.22    "Plan of Distribution" as further defined in §III of the Notice, means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of Administration Expenses of the Settlement, Taxes and Tax Expenses and such attorneys' fees, costs, expenses and interest and other expenses, as may be awarded by the Court.    Any Plan of Distribution is not part of the Stipulation and the Released Persons shall have no responsibility or liability with respect thereto.

1.23    "Publication Notice" means the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing for publication substantially in the form attached here as Exhibit A-3.

1.24    "Proof of Claim and Release" means the form of instructions and Proof of Claim and Release form annexed hereto as Exhibit A-2.

1.25    "Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued and un-accrued, liquidated or un-liquidated, matured or un-matured, at law or in equity, whether class or individual in nature, including but not limited to, both known claims and Unknown Claims, (i) that have been asserted in this Action, (ii) that could have been asserted in this Action or in any other forum by Lead Plaintiffs or by any member of the Class, as such or in any other capacity, against any of the Released Persons that arise out of, relate to or are based upon, in whole or in part, any of the allegations, transactions, facts, matters or occurrences,

representations or omissions, set forth or referred to in the Complaint filed in this Action by Lead Plaintiffs, or the purchase of any common stock or call options or sale of put options of Huntsman during the Class Period; or (iii) that relate to the administration or distribution of the Net Settlement Fund.

1.26    "Released Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, foreign, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Litigation or any forum by the Defendants, or the heirs, successors and assigns of any of them against the Lead Plaintiffs, any of the Class Members, or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Litigation, excluding any claims for breaches of this Stipulation.

1.27    "Released Persons" means each and all of the Defendants and Apollo, as well as each and all of their present or former parents, subsidiaries, affiliates (as defined in 17 C.F.R. §210.1-02(b)), successors and assigns, and each and all of the present or former officers, directors, employees, agents, attorneys, accountants, financial advisors, commercial bank lenders, insurers, investment bankers, representatives, general and limited partners and partnerships, heirs, executors, administrators, successors and assigns of each of them.

1.28    "Settlement Fund" means Eighteen Million Dollars ($18,000,000.00) in cash.

1.29    "Settling Parties" means, collectively, the Defendants and the Lead Plaintiffs on behalf of themselves and the Class Members.

1.30    "Unknown Claims" means any and all Released Claims which the Lead Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, and any Released Defendants' Claims that any Defendant does not know or

suspect to exist which, if known by him, her or it, might have affected his, her or its decision(s) with

respect to the Settlement, included but not limited to, any decision whether to request exclusion from

the Class or in his, her or its favor, to object to any aspect of this Settlement.  With respect to any

and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree

that, upon the Effective Date, the Lead Plaintiffs and Defendants shall expressly waive and each of

the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly

waived to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by

any law of any state or territory of the United States, or principle of common law, which is similar,

comparable or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from

those which he, she or it now knows or believes to be true with respect to the subject matter of the

Released Claims, but the Lead Plaintiffs shall expressly, and each Class Member, upon the Effective

Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and

forever settled and released any and all Released Claims, known or unknown, suspected or

unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or

heretofore have existed, upon any theory of law or equity now existing or coming into existence in

the future, including, but not limited to, conduct that is negligent, intentional, with or without malice,

or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such

different or additional facts.  The Lead Plaintiffs and Defendants acknowledge, and the Class

Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing

waiver was separately bargained for and was a key element of the Settlement of which this release is a part.

### 2.    The Settlement

### a.    The Settlement Fund

2.1    Defendants shall cause the payment of $1,000,000 within fifteen (15) business days after the entry of the Order for Notice and Hearing, and the payment of the balance of $17,000,000, plus interest earned on this amount from the date of the entry of the Order for Notice and Hearing at the same rate as that earned in the account with the Escrow Agent, within fifteen (15) business days after the Court enters the Judgment, both by means of wire transfer, check(s) or money order(s) made out to the Clerk of the Court, with a cover letter identifying Hexion as a Defendant in this Litigation, setting forth the title and civil action number of this Litigation, and the name of the Court, and specifying that payment is made pursuant to the order preliminarily approving the Settlement.

2.2    The Clerk of the Court shall deposit the funds into an interest bearing account with the CRIS.  These funds, together with any interest earned thereon, shall constitute the Gross Settlement Fund.  In accordance with 28 U.S.C. §1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk of the Court is directed, without further order of this Court, to deduct from the interest earned on the money in the Settlement Fund a fee equal to ten percent of the interest earned on the money in the Settlement Fund.  Such fee shall not exceed that authorized by the Judicial Conference of the United States.  The Clerk shall provide for Lead Plaintiffs' Counsel the monthly statement of interest earned by the Settlement Fund.  The Settlement Fund shall be held by the CRIS until further order of the Court, except that prior to the time the Court enters the Judgment, up to $150,000 may be drawn upon the CRIS to pay Administrative Expenses.

2.3     The Gross Settlement Fund, net of any Taxes (as defined below) and Tax Expenses (as defined below), shall be used to pay (i) Administrative Expenses, and (ii) the attorneys' fees and expenses awarded by the Court.  The balance of the Gross Settlement Fund (the "Net Settlement Fund") shall be distributed to Authorized Claimants in accordance with the terms of this Stipulation, including the Exhibits hereto.

2.4     All funds held in the Escrow Account shall be deemed and considered to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order of the Court.

**b.     Taxes**

2.5     Qualified Settlement Fund

(a)     The Settling Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, Plaintiffs' Lead Counsel and Defendants shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.5, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Plaintiffs' Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  Plaintiffs' Lead Counsel may delegate responsibilities hereunder to their agents, but shall remain responsible to ensure the proper completion of these duties.

(b)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Plaintiffs' Lead Counsel.  Plaintiffs' Lead Counsel shall timely and properly cause to be filed all

informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in ¶2.5(a) hereof) shall be consistent with this ¶2.5 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the interest earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.5(c) hereof.

        (c)      All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Settling Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.5 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.5) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events, the Settling Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  The Settlement Fund shall indemnify and hold each of the Defendants and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid out of the Settlement Fund without prior order from the Court and the Claims Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither the

Defendants nor their counsel are responsible nor shall they have any liability therefor. The Settling Parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.5.

(d)    For the purpose of this ¶2.5, references to the Settlement Fund shall include both the Settlement Fund and any earnings thereon.

### c.    Termination of Settlement

2.6    In the event that the Stipulation is not approved or the Stipulation is terminated, canceled, or fails to become effective for any reason, the Settlement Fund (including accrued interest) less expenses actually incurred or due and owing for Notice and Administrative Expenses shall be returned to Defendants pursuant to written instructions from Defendants' counsel.

### 3.    Order for Notice and Hearing

3.1    Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court and shall apply for entry of an order (the "Order for Notice and Hearing"), in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, certification of the Settlement Class, approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice (the "Publication Notice"), in the forms of Exhibits A-1 and A-3 attached hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Distribution, the general terms of the Fee and Expense Application and the date of the Settlement Hearing.

### 4.    Releases

4.1    Upon the Effective Date, the Lead Plaintiffs and each of the Class Members who has not timely opted out of the Class, and their predecessors, successors, agents, representatives, attorneys and affiliates, and the heirs, executors, administrators, successors and assignees of each of

14

them, directly or indirectly, individually, representatively or in any other capacity, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged against the Released Persons (whether or not such Class Members execute and deliver the proof of claim and release forms) all Released Claims (including Unknown Claims) as well as any other claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Action or the Released Claims.

4.2     Upon the Effective Date, the Lead Plaintiffs and each of the Class Members who has not timely opted out of the Class, and their predecessors, successors, agents, representatives, attorneys and affiliates, and the heirs, executors, administrators, successors and assigns of each of them, directly or indirectly, individually, representatively or in any other capacity, shall be permanently barred and enjoined from the assertion, institution, maintenance, prosecution or enforcement against Defendants, or any other Released Persons, in any state or federal court or arbitral or other forum, or in the court or other forum of any foreign jurisdiction, of any and all Released Claims (including Unknown Claims) as well as any other claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Action or the Released Claims.

4.3     The Proof of Claim and Release to be executed by Class Members shall release all Released Claims against the Released Persons and shall be in the form contained in Exhibit A-2 attached hereto.

4.4     Upon the Effective Date, each of the Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Lead Plaintiffs, Class Members and Plaintiffs' Lead Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Defendants' Claims.

5. **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall provide notice of the Settlement to the Class, shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2    Within five (5) business days of the Court's preliminary approval of this Stipulation, Defendants shall use their reasonable best efforts to provide to Plaintiffs' Lead Counsel in a computer-readable format the last known names and addresses of all shareholders of record during the Class Period, as well as a list of e-mail addresses of "street-name" holders used by Huntsman in its communications to shareholders.    Hexion shall bear the expense of providing such names and addresses to Plaintiffs' Lead Counsel.

5.3    Within ten (10) calendar days of Huntsman's transfer agent providing Plaintiffs' Lead Counsel with the last known names and addresses of all shareholders of record during the Class Period, as required by ¶5.2 hereof, Plaintiffs' Lead Counsel will cause to be mailed to all shareholders of record identified by Huntsman's transfer agent a form of Notice and Proof of Claim and Release form, in the forms of Exhibits A-1 and A-2 attached hereto, setting forth the terms of the Stipulation, including the proposed Plan of Distribution and Plaintiffs' Lead Counsel's proposed request for attorneys' fees and expenses; the right to appear at the Settlement Hearing; and the right to request exclusion from the Class. A summary notice, in the form of Exhibit A-3 attached hereto, will also be published once over the PR Newswire. The cost of providing such notice shall be paid out of the Gross Settlement Fund.

5.4    The Gross Settlement Fund shall be applied as follows:

(a)      to pay Plaintiffs' Lead Counsel's attorneys' fees and expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court;

(b)      to pay, except as provided in ¶5.2, the Administrative Expenses as described in ¶1.1 and escrow fees and costs, if any;

(c)      to pay the Taxes and Tax Expenses described in ¶2.5 hereof; and

(d)      to distribute the balance of the Gross Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Distribution, or the Court.

5.5      Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release and as are reasonably available to such Person.

5.6      Except as otherwise ordered by the Court, all Class Members who fail to submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or who file a Proof of Claim and Release that is rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.  Notwithstanding the foregoing, Plaintiffs' Lead Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund is not materially delayed thereby.

5.7      Plaintiffs' Lead Counsel shall cause the Claims Administrator to calculate the allocation of the Net Settlement Fund to each member of the Class, and shall submit to the Court a final order for distribution of the Net Settlement Fund.  Upon entry by the Court of that final

distribution order, Plaintiffs' Lead Counsel shall cause the Claims Administrator to mail to each Class Member eligible for a distribution of the Net Settlement Fund his, her or its *pro rata* share. The cost of these procedures shall be paid out of the Gross Settlement Fund.

5.8    Defendants shall not have a reversionary interest in the Net Settlement Fund. If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), any such balance shall be distributed to 501(c)(3) non-profit charities, as designated and as provided for by order of the Court.

5.9    The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Distribution, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith, or the payment of Plaintiffs' Attorneys fees and expenses.

5.10    It is understood and agreed by the Settling Parties that any proposed Plan of Distribution of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Distribution shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation. Class Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Distribution.

**6.    Plaintiffs' Lead Counsel's Attorneys' Fees and Expenses**

6.1    Plaintiffs' Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distribution to Plaintiffs' Lead Counsel from the Settlement Fund for:

(a) an award of attorneys' fees to be paid out of the Settlement Fund; plus (b) expenses incurred in connection with prosecuting the Action.  Neither Plaintiffs' Lead Counsel nor any Class Member shall be entitled to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or the distribution of the Net Settlement Fund.

6.2     The attorneys' fees, expenses and costs, including the fees of experts and consultants, as awarded by the Court, shall be paid to Plaintiffs' Lead Counsel from the Settlement Fund, as ordered, upon the Effective Date.

6.3     The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application to be paid out of the Gross Settlement Fund, are not part of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Action.

6.4     Released Persons shall have no responsibility for any payments of attorneys' fees and expenses to Plaintiffs' Lead Counsel.

**7.      Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)      execution of the Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b)      payment of the Settlement Amount to the Escrow Agent by Defendants;

(c)      the Stipulation is not terminated pursuant to ¶8.2;

(d)      the Court entering the Order for Notice and Hearing, as required by ¶3.1 hereof;

(e)     the Court entering a Judgment substantially in the form of Exhibit B attached hereto that, *inter alia*, dismisses with prejudice the Action as set forth above; and

(f)     the Judgment becoming Final, as defined in ¶1.11 hereof.

7.2     Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If all of the conditions specified in ¶7.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶7.4 hereof unless Plaintiffs' Lead Counsel and counsel for the Defendants mutually agree in writing to proceed with the Settlement.

7.3     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days, the Settlement Fund (including accrued interest), less expenses which have either been incurred or disbursed for notice and administration costs pursuant to ¶1.1 or pursuant to ¶2.6 hereof, shall be refunded to Defendants pursuant to written instructions from Defendants' counsel.

7.4     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action as of September 1, 2009. In such event, the terms and provisions of the Stipulation, with the exception of ¶7.3 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be deemed to return to their status as September 1, 2009 and shall be required to present an amended schedule to the Court.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Distribution or the amount of any attorneys'

fees, costs, expenses and interest awarded by the Court to Plaintiffs' Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

### 8.    Opt-Out Termination Right

8.1    The Settling Parties shall request in the Order for Notice and Hearing that requests for exclusion must be received at least fourteen (14) calendar days prior to the date of the Settlement Hearing (as defined in ¶5 of Exhibit A) . Upon receiving any requests for exclusion pursuant to the Notice, the Claims Administrator shall promptly notify Plaintiffs' Lead Counsel and counsel for the Defendants of such request(s) for exclusion.

8.2    The Defendants may terminate this Settlement if members of the putative Class who, collectively, purchased or otherwise acquired in excess of a certain amount of Huntsman securities during the Class Period, which amount is defined by the Settling Parties in a Confidential Side Letter, dated contemporaneously herewith, opt-out of the proposed Settlement.

8.3    In the event of such termination, this Stipulation shall become null and void and of no further force or effect and the provisions of ¶7.4 shall apply.

8.4    If the Defendants elect to terminate this Settlement as provided in ¶8.2, written notice of such termination must be provided to Plaintiffs' Lead Counsel on or before seven (7) calendar days prior to the Settlement Hearing.  Plaintiffs' Lead Counsel shall have the right to communicate with Class Members regarding their decisions to opt-out.  If a sufficient number of Class Members withdraw their requests for exclusion such that the total number of Huntsman securities purchased or otherwise acquired by the remaining shareholders requesting exclusion falls below the threshold set forth in the Confidential Side Letter, Plaintiffs' Lead Counsel shall so advise the Defendants' Counsel and any notice by the Defendants of termination of the Settlement shall automatically and immediately become null and void.

9.    **Miscellaneous Provisions**

9.1    The Settling Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action. The Settlement shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Judgment will contain a finding that, during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum in which the Action was brought or defended in bad faith or without a reasonable basis.

9.3    Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be, or may be used as an admission of, or as evidence of, the validity of any fact or issue of law, any Released Claim, or any wrongdoing or liability of any Released Person; (b) is or may be deemed to be an admission of any fact or issue of law; or (c) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any Released Person; or (d) is or may be deemed to be, or may be used as an admission or evidence that any claims asserted by Lead Plaintiffs were not valid or that the amount recoverable was not greater than the Settlement amount, in any civil, criminal or administrative proceeding in any court, administrative agency or

other tribunal. The Released Persons may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.4    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

9.5    Pursuant to  the Stipulation and Protective Order of Confidentiality Governing Covered Exhibits (the "Confidentiality Order") in this Action, entered on April 8, 2009, within sixty (60) calendar days after the Effective Date of the Settlement, any Person possessing any documents produced in discovery, or any "Confidential" or "Highly Confidential" Information Materials (as defined in ¶ 1 of the Confidentiality Order), shall make a reasonable effort to return all such documents and all such Confidential Information or Highly Confidential Information Materials, including all copies thereof, to the producing party, or their counsel, or, in lieu thereof, shall certify in writing that a reasonable and good faith effort was made to locate and destroy all such documents and all such Confidential Information or Highly Confidential Information.

9.6    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.7    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.8    The Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties or inducements have been made to any Settling Parties concerning the Stipulation or its Exhibits other than the representations, warranties

and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

      9.9    Neither the Class Members nor Defendants shall be bound by the Stipulation if the Court modifies material terms thereof, provided, however, that it shall not be a basis for Class Members to terminate the Settlement if the Court modifies any proposed Plan of Distribution or criteria for allocation of the Settlement Fund amongst Class Members, or the Plan of Distribution is modified on appeal.  Nor shall it be a basis to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses or the distribution of the Net Settlement Fund.  Notwithstanding any such modifications of the Stipulation with respect to the Plan of Distribution or attorneys' fees or expenses, Defendants shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds to the Settlement Fund.

      9.10    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so and to take any and all action required or permitted hereunder.

      9.11    Lead Plaintiffs and Plaintiffs' Lead Counsel represent and warrant that none of the Class Members' claims or causes of action referred to in this Action or this Stipulation has been assigned, encumbered or in any manner transferred in whole or in part.

      9.12    Except as ordered by the Court or agreed to by the Settling Parties, neither Lead Plaintiffs nor Plaintiffs' Lead Counsel nor Defendants nor Defendants' Counsel shall issue any public release concerning the Settlement.

9.13    The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

9.14    The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Settling Parties hereto.

9.15    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.16    Pending approval by the Court of the Stipulation and its Exhibits, all proceedings in this Action shall be stayed and all members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

9.17    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the state of New York, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the state of New York without giving effect to that state's choice-of-law principles.

9.18    The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

9.19    No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by Plaintiffs' Lead Counsel or counsel for the Defendants; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Class Member's tax obligations, and the determination thereof are the sole

responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

9.20    This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that this Stipulation is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

**IN WITNESS WHEREOF**, the parties hereto have caused the Stipulation to be executed by their duly authorized attorneys, dated December 9, 2009.

**LAW OFFICES
BERNARD M. GROSS, P.C.
BY:**

**DEBORAH R. GROSS
ROBERT P. FRUTKIN**
Suite 450, Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215-561-3600
Fax:  215-561-3000

*Lead Counsel for Plaintiffs*

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
BY:**

**LEWIS CLAYTON
LIZA VELAZQUEZ**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Fax: 212-757-3990

*Attorneys for Defendants Hexion Specialty
Chemicals, Inc. and Craig Morrison*

**MINTZ LEVIN COHN FERRIS GLOVSKY
and POPEO, P.C.
BY:**

**ROBERT I. BODIAN
JEROME GOTKIN**
Chrysler Center
666 Third Avenue
New York, NY 10017
Telephone: 212-935-3000
Fax: 212-983-3115

*Attorneys for Defendant Joshua Harris*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
BY:

_____
LEWIS CLAYTON
LIZA VELAZQUEZ
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Fax: 212-757-3990

*Attorneys for Defendants Hexion Specialty
Chemicals, Inc. and Craig Morrison*

MINTZ LEVIN COHN FERRIS GLOVSKY
and POPEO, P.C.
BY:

_____
ROBERT I. BODIAN
JEROME GOTKIN
Chrysler Center
666 Third Avenue
New York, NY 10017
Telephone: 212-935-3000
Fax: 212-983-3115

*Attorneys for Defendant Joshua Harris*

27