## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANDRA LIFSCHITZ, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. |
| Plaintiff, ) ) | 08 Civ. 6394 (RMB) |
| vs. ) ) | |
| HEXION SPECIALTY CHEMICALS, INC., CRAIG O. MORRISON, and JOSHUA J. HARRIS, ) ) ) ) | |
| Defendants. ) ) | |

### RE-FILED LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, PLAN OF DISTRIBUTION AND CERTIFICATION OF THE SETTLEMENT CLASS

**TABLE OF CONTENTS**

**PAGE**

I.      PRELIMINARY STATEMENT ................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND OF THE CASE .................1

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE............2

        A.      The Class Satisfies the Numerosity Requirement.........................................3

        B.      There are Questions of Law and Fact Common to the Class.......................3

        C.      Lead Plaintiffs' Claims are Typical of the Claims of the Class...................4

        D.      Lead Plaintiffs Have Fairly and Adequately Protected
                the Interest of the Class.................................................................5

        E.      Predominance and Superiority Are Also Satisfied .................................6

                1.      Common Legal and Factual Questions Predominate
                        In This Action ................................................................6

                2.      A Class Action Is A Superior Means To Efficiently Adjudicate
                        Lead Plaintiffs' Claims .....................................................7

        F.      Lead Counsel Satisfies All Requirements for Appointment
                as Class Counsel ..........................................................................8

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
        ADEQUATE AND SHOULD BE APPROVED BY THE COURT....................9

        A.      The Standards for Reviewing a Proposed Settlement for
                Final Approval ..............................................................................9

                1.      The Complexity, Expense and Likely Duration of the
                        Litigation Supports Approval of the Settlement ..........................11

                2.      The Reaction of the Class to the Settlement .................................12

                3.      The Stage of the Proceedings...............................................13

                4.      The Risk of Establishing Liability and Damages .........................14

                5.      The Risks of Maintaining the Class Action Through Trial...........17

6.      The Ability of Defendants to Withstand a Greater
        Judgment ......................................................................................19

7.      The Reasonableness of the Settlement in Light of the
        Best Possible Recovery and the Attendant Risks of Litigation .....19

V.      THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND
        ADEQUATE.....................................................................................21

VI.     CONCLUSION.................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adair v. Bristol Technology System,*
   1999 U.S. Dist. LEXIS 17627 (S.D.N.Y. Nov. 16, 1999) ..........................................15

*Amchem Products v. Windsor,*
   521 U.S. 591 (1997)...................................................................................................6, 8

*Amida Capital Management II, LLC v. Cerberus,*
   2009 U.S. Dist. LEXIS 105738 (S.D.N.Y. Nov. 10, 2009) ..................................16, 23

*Attenborough v. Construction & General Building Laborers Local 79,*
   238 F.R.D. 82 (S.D.N.Y. 2006) ...................................................................................3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   222 F.3d 52 (2d Cir. 2000)...........................................................................................6

*Beane v. Bank of New York Mellon,*
   2009 U.S. Dist. LEXIS 27504 (S.D.N.Y. Mar. 31, 2009) ...........................................2

*D'Amato v. Deutsche Bank,*
   236 F.2d 78 (2d Cir. 2001).........................................................................9, 10, 12, 19

*Denney v. Deutsche Bank, A.G.,*
   443 F.3d 253 (2d Cir. 2006)........................................................................................2

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974).................................................................................10, 21

*Dura Pharmaceuticals, Inc. v. Broudo,*
   544 U.S. 336 (2005)...................................................................................................22

*First New York Securities, LLC v. United Rentals, Inc.,*
   2009 U.S. Dist. LEXIS 78605 (D. Conn. Aug. 24, 2009) ..........................................16

*Goldberger v. Integrated Resource, Inc.,*
   209 F.3d 43 (2d Cir. 2000).........................................................................................10

*Hicks v. Morgan Stanley & Co.,*
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ...........................................11

*In re AOL Time Warner, Inc. Sec. & ERISA Litigation,*
   2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006)............................11, 13, 14, 21

*In re AOL Time Warner, Inc. Sec. & ERISA Litigation,*
  2008 U.S. Dist. LEXIS 57544 (S.D.N.Y July 30, 2008) ............................................22

*In re "Agent Orange" Prod. Liability Litigation,*
  597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd,* 818 F. 2d 145 (2d Cir. 1987) ....................20

*In re Agent Orange Prod. Liability Litigation,*
  611 F. Supp. 1396 (E.D.N.Y. 1985) ............................................................................24

*In re Alloy, Inc., Sec. Litigation,*
  2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) ......................................11, 15

*In re American Bank Note Holographics, Inc. Sec. Litigation,*
  127 F. Supp. 2d 418(S.D.N.Y. 2001)............................................................................11

*In re Blech Sec. Litigation,*
  187 F.R.D. 97 (S.D.N.Y. 1999) ......................................................................................7

*In re Crayfish Co. Sec. Litigation,*
  2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. 2002)..............................................................5

*In re Drexel Burnham Lambert Group, Inc.,*
  960 F.2d 285 (2d Cir. 1992)............................................................................................8

*In re EVCI Career Colleges Holding Corp. Sec. Litigation,*
  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .............................................14

*In re Elan Sec. Litigation,*
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)...........................................................................12

*In re Enron Corp. Sec., Derivative & ERISA Litigation,*
  228 F.R.D. 541 (S.D. Tex. 2005)...................................................................................21

*In re Global Crossing Sec. & ERISA Litigation,*
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................13, 20, 24

*In re Holocaust Victim Assets Litigation,*
  413 F.3d 183 (2d Cir. 2001)...........................................................................................24

*In re Independent Energy Holdings PLC Sec. Litigation,*
  2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003)................................................17, 20, 22

*In re Initial Public Offering Sec. Litigation,*
  2007 U.S. Dist. LEXIS 19632 (S.D.N.Y Feb. 23, 2007)................................................3

*In re Initial Public Offering Sec. Litigation,*
  2009 U.S. Dist. LEXIS 93162 (S.D.N.Y. Oct. 6, 2009) .................................................9

*In re Marsh & McLennan Cos., Inc., Sec. Litigation,*
  2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ...........................................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litigation,*
  2007 U.S. Dist. LEXIS 9450(S.D.N.Y. Feb. 1, 2007).................................................. 23

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litigation,*
  246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................................3, 7

*In re Merrill Lynch Tyco Research Sec. Litigation,*
  249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................4, 5, 13

*In re Michael Milken & Associates Sec. Litigation,*
  150 F.R.D. 57 (S.D.N.Y. 1993) ..........................................................................20, 24

*In re NASDAQ Market-Makers Antitrust Litigation,*
  169 F.R.D. 493 (S.D.N.Y. 1996) ...............................................................................5

*In re NASDAQ Market-Makers Antitrust Litigation,*
  2000 U.S. Dist. LEXIS 304 (S.D.N.Y. Jan. 12, 2000).................................................22

*In re Nortel Networks Corp. Sec. Litigation,*
  2003 U.S. Dist. LEXIS 15702 (S.D.N.Y. Sept. 8, 2003)................................................4

*In re Nortel Networks Corp. Sec. Litigation,*
  2006 U.S. Dist. LEXIS 93390 (S.D.N.Y. Dec. 26, 2006) ...........................................12

*In re OCA, Inc. Securities and Derivative Litigation,*
  2009 U.S. Dist. LEXIS 19210 (E.D. La. March 2, 2009)............................................14

*In re PNC Finance Services Group, Sec. Litigation,*
  440 F. Supp. 2d 421 (W.D. Pa. 2006).......................................................................18

*In re PaineWebber Ltd. P'ships. Litigation,*
  171 F.R.D. 104 (S.D.N.Y.), *aff'd,* 117 F.2d 721 (2d Cir. 1997) .................................22

*In re Sony SXRD Rear Projection TV Class Action Litigation,*
  2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008)..............................................19

*In re Sumitomo Copper Litigation,*
  189 F.R.D. 274 (S.D.N.Y. 1999) ..........................................................................9, 11

*In re Top Tankers, Inc. Sec. Litigation,*
    2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) ...............................12, 14, 18

*In re Veeco Instruments, Inc. Sec. Litigation,*
    235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................ 4

*In re Veeco Instruments Sec. Litigation,*
    2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. 2007).................................................12, 22, 24

*In re Visa Check/Mastermoney Antitrust Litigation,*
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom Wal-Mart Stores, Inc. v.*
    *Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) .......................................................12, 21

*In re Warner Chilcott Ltd. Sec. Litigation,*
    2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20, 2008)..........................................19

*In re Warner Communications Sec. Litigation,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) .......................17

*In re WorldCom, Inc. Sec. Litigation,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................21, 22

*Joel v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000)............................................................................9

*Maley v. Del Global Technologies Corp,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................21

*Marisol A. ex. Rel. Forbes v. Giuliani,*
    929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 372 (2d Cir. 1997) .....................3

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972)...........................................................................20

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
    226 F.R.D. 456 (S.D.N.Y. 2005) ......................................................................3

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993)..........................................................................3, 5

*Rossini v. Ogilvy & Mather, Inc.,*
    798 F.2d 590 (2d Cir. 1986)...........................................................................5

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................................12

*Weinberger v. Kendrick* ,
  698 F.2d 61(2d. Cir. 1983)..................................................................................9

## STATE CASES

*Hexion Specialty Chemical Inc., et al. v. Huntsman Corp.*, 965 A.2d 715 (Del.
  Ch. Sept. 29, 2008) ...........................................................................................18

## DOCKETED CASES

*Huntsman, Hexion Specialty Chemicals Inc. v. Huntsman Corp.*, Civil Action No.
  3841-VCL .........................................................................................................3

*Huntsman Corp. v. Credit Suisse Securities (USA) (LLC) and Deutsche Bank
  Securities Inc.* (the "Texas Litigation") ........................................................3

*In re Vivendi Universal, S.A. Sec. Litig.*, 02-cv-5571 (RJH)(HBP) (S.D.N.Y.
  2010) ...............................................................................................................12

## FEDERAL STATUTES

Fed. R. Civ. P. 23(a)(1)...................................................................................3

Fed. R. Civ. P. 23(a)(2)...................................................................................3

Fed. R. Civ. P. 23(a)(3)...................................................................................4

Fed. R. Civ. P. 23(a)(4)...................................................................................6

Fed. R. Civ. P. 23 (b)(3)...............................................................................6, 7

Fed. R. Civ. P. 23(g)(1)...................................................................................8

## MISCELLANEOUS

*SECURITIES CLASS ACTION SETTLEMENTS: 2008 REVIEW AND ANALYSIS*,
available at http://securities.cornerstone.com/pdf_Cornerstone_Research_Settlements_
2008_Analysis.pdf. Ellen M. Ryan & Laura E. Simmons, Cornerstone Research. . . . . 20

## I.    PRELIMINARY STATEMENT

The Stipulation of Settlement dated January 11, 2010 (the "Stipulation"), embodies a settlement (the "Settlement") made and entered into by and among the Lead Plaintiffs Sandra Lifschitz and Robert Burch (on behalf of themselves and each of the members of the Class), and the Defendants Hexion Specialty Chemicals, Inc. ("Hexion"), Craig O. Morrison ("Morrison"), and Joshua J. Harris ("Harris") (collectively "Defendants") by and through their counsel of record in the above-captioned litigation pending before this Court (the "Action").    The Settlement now before the Court provides for a substantial cash fund of Eighteen Million Dollars ($18,000,000.00), plus interest earned thereon (the "Settlement Fund"), for the benefit of those persons or entities who purchased the common stock or call options, or sold put options of Huntsman Corporation ("Huntsman") between May 9, 2008 and June 18, 2008, inclusive ("Settlement Class").    Stipulation, ¶ 1.4.    Defendants will obtain a release of the Released Claims[1] as to themselves and to all Released Persons as those terms are defined in the Stipulation. *See* Stipulation, ¶¶ 1.25, 1.5, 4.4; Judgment and Order of Dismissal with Prejudice.

The Settlement is fair, reasonable and adequate under the governing standards in the Second Circuit and warrants final approval by this Court.

## II.    FACTUAL AND PROCEDURAL BACKGROUND OF THE CASE

The Court is respectfully referred to the accompanying Declaration of Deborah R. Gross, Esquire ("Gross Decl.") for a detailed discussion of the Lead Plaintiffs' claims, the factual and procedural background of the Action, the investigation and discovery undertaken by counsel, and the negotiations leading to the Settlement. *See* Gross Decl., ¶¶ 7-38.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Stipulation and the Class Notice.

## III.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Pursuant to the Preliminary Approval Order dated January 21, 2010, the Court conditionally certified the following Settlement Class:

> All persons or entities who purchased the common stock or call options, or sold put options, of Huntsman during the period from May 9, 2008 and June 18, 2008, inclusive.

Preliminary Approval Order, ¶ 1.[2] [Docket No. 52].

Lead Plaintiffs seek certification of this Class under Rule 23 to effectuate the Settlement. "A class seeking to be certified for purposes of a settlement must satisfy the applicable requirements of Rules 23(a) and 23(b)(3), *i.e.*, numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority." *Beane v. Bank of New York Mellon*, 2009 U.S. Dist. LEXIS 27504, at *15 (S.D.N.Y. Mar. 31, 2009) (citation omitted); *see also Denney v. Deutsche Bank, A.G.*, 443 F.3d 253, 270 (2d Cir. 2006). This Action satisfies all of the prerequisites for class certification.

---

[2] The Class shall exclude Defendants, members of the immediate family of any such Defendant, any entity which has or had a controlling interest in any Defendant or in which any Defendant has or had a controlling interest, their respective officers and directors, Apollo Global Management, LLC ("Apollo Global"), any partner of or person or entity affiliated with Apollo Global, including, without limitation, any fund established by Apollo Global and/or any person or entity who invested in such fund (Apollo Global and all such partners, persons, entities and funds being collectively referred to as "Apollo"), Huntsman, Jon M. Huntsman, Peter R. Huntsman Family Holdings Company LLC, The Jon and Karen Huntsman Foundation, Karen H. Huntsman Inheritance Trust, Huntsman Financial Corporation, Brynn B. Huntsman, as Custodian under The Utah Uniform Transfers to Minors Act, for the benefit of Rebecca Brynn Huntsman, Rachel Brynn Huntsman, Caroline Brynn Huntsman, Amber Brynn Huntsman, Virginia Brynn Huntsman, and James B. Huntsman, Credit Suisse Securities LLC, and Deutsche Bank Securities, Inc., and officers, directors, legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person. If the Settlement is not approved by the Court, or is not consummated for any other reason, this conditional determination shall be null and void and Defendants shall not be precluded from opposing certification of the class, or any part thereof. *Id.*

### A.    The Class Satisfies the Numerosity Requirement

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).    Impracticable does not suggest impossible, simply inconvenient or difficult. *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, at *84 (S.D.N.Y Feb. 23, 2007) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).    A precise number is unnecessary so long as plaintiffs provide a reasonable basis for their estimate. *Attenborough v. Constr. & Gen. Bldg. Laborers Local 79*, 238 F.R.D. 82, 94(S.D.N.Y. 2006). "Numerosity is presumed when a class consists of forty or more members." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005).    As alleged in the Complaint (at ¶ 13), and as refined with experts during the settlement process, millions of Huntsman shares were traded on the New York Stock Exchange during the Class Period.    Over 5,800 Notices were mailed to Class Members.    Gross Decl., ¶ 39.    The numerosity requirement is easily satisfied as the number of Class Members easily exceeds the presumed threshold making joinder of all parties impracticable.

### B.    There are Questions of Law and Fact Common to the Class

Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).    This standard is satisfied if there is even one common question of fact or law. *Marisol A. ex. Rel. Forbes v. Giuliani*, 929 F. Supp. 662, 690-91 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997).    The commonality requirement of Rule 23(a)(2) is satisfied if "all class members are in a substantially identical factual situation and the questions of law raised by the plaintiff[s] are applicable to each class member." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 164 (S.D.N.Y. 2007) (citation omitted).    The Rule does not require that every question of law or fact be common to each class

member. *Id.* "The commonality requirement has been applied permissively in the context of securities fraud litigation." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006); *see, e.g., In re Nortel Networks Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 15702, at *7 (S.D.N.Y. Sept. 8, 2003) ("whether defendants violated the federal securities laws" met common question requirement).

Virtually all of the issues of fact and law are common to the Class. Here, the common questions of law and fact shared by all members of the putative Class are the following:

(a)    whether the Defendants' actions violated the federal securities laws;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about Defendants' actions with respect to the merger with Huntsman;

(c)    whether the prices of Huntsman common stock were artificially manipulated during the Class Period; and

(d)    to what extent, if at all, the members of the Class have sustained damages and the proper measure of damages.

*See* Complaint, ¶ 16.

Therefore, there are questions of law and fact common to all members of the Class. *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 131 (S.D.N.Y. 2008) (finding commonality satisfied where plaintiffs suing under same federal securities laws, alleging identical misrepresentations and/or omissions of material statements by defendants, and alleging that the misrepresentations artificially inflated the price of stock at issue, thereby resulting in plaintiffs' losses).

## C.    Lead Plaintiffs' Claims are Typical of the Claims of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3)'s typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux,* 987 F.2d at

936. *See also, Rossini v. Ogilvy & Mather, Inc.*, 798 F. 2d 590, 598 (2d Cir. 1986) (reversing decertification order finding that evidence indicating that employer discriminated in same general fashion against class representatives and against other members of the class was sufficient to satisfy typicality). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean that the claims must be identical. *See In re Crayfish Co. Sec. Litig*, 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. 2002).

Here, the Lead Plaintiffs' claims do not differ in any material respect from the claims of the rest of the putative Class. Lead Plaintiffs purchased Huntsman common stock and call options and sold put options at prices that were allegedly artificially inflated by the Defendants' alleged fraud, and were damaged thereby. Thus, the claims of all Class Members are the same as the claims of the Lead Plaintiffs. All of the claims are based on the same set of facts and raise the same causes of action against Defendants. Furthermore, any differences that may exist among Lead Plaintiffs and other Class Members with respect to the amount of damages do not destroy typicality. *In re Merrill Lynch Tyco*, 249 F.R.D. at 131 (finding no indication that lead plaintiffs' federal securities law claims differed in any respect from the claims of rest of the putative class to undermine typicality, apart from amount of damages allegedly suffered by each class member); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996). Thus, the typicality requirement is satisfied.

### D.     Lead Plaintiffs Have Fairly and Adequately Protected the Interest of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

5

the interests of the class." Fed. R. Civ. P. 23(a)(4).  Representation is adequate if: (1) there is no conflict of interest between the plaintiffs and the other class members; and (2) plaintiffs' attorneys are qualified, experienced and capable. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Lifschitz and Robert Burch have been appointed Lead Plaintiffs by the Court, on a disputed motion. Gross Decl., ¶ 15. Their interests are mutually aligned with the interests of the members of the Class. Lead Plaintiffs share common questions of law and fact with the members of the Class and their claims are typical of the claims of other class members.  Furthermore, there is no evidence of any antagonism between their respective interests that would undermine Lead Plaintiffs' duty to protect the interests of the rest of the Class.

Lead Counsel are qualified, experienced and capable attorneys as this Court has already recognized in its Order Appointing Lead Plaintiffs and Lead Counsel.  Lead Counsel have significant experience in securities class actions and have successfully conducted the Action, culminating in this Settlement. *See* Gross Decl., Exhibit A (Biography of Lead Counsel).

Hence, the Court should certify Lead Plaintiffs as adequate Class Representatives.

**E.     Predominance and Superiority Are Also Satisfied**

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law *or* fact predominate over any individual questions and a class action is superior to other available means of adjudication.  Fed. R. Civ. P. 23 (b)(3)  This case easily meets Rule 23(b)(3)'s requirements.

**1.     Common Legal and Factual Questions Predominate In This Action**

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). "In

determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class." (quoting *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999). Even if each Class Member decided to bring a suit individually, each plaintiff would have to allege and prove virtually identical facts. In this case, Defendants' alleged liability arises from their dissemination of false and misleading statements which included the omission of material facts regarding Hexion's decision to void the merger with Huntsman. This is the central issue in the case and it predominates over any individual issues that theoretically might exist.

## 2.    A Class Action Is A Superior Means To Efficiently Adjudicate Lead Plaintiffs' Claims

Rule 23(b)(3) sets forth the following factors to be considered in making a determination of superiority: "(A) The interest of members of the class in individually controlling the prosecution. . . of separate actions; (B) The extent and nature of any litigation concerning the controversy already commenced by. . . members of the class; (C) The desirability. . . of concentrating the litigation of the claims in the particular forum; and (D) The difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). Class action treatment of this Action is superior to any other method for the fair and efficient adjudication of such litigation. *In re Merrill Lynch & Co., Inc. Research Repts. Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. Sept. 5, 2007) ("Because of the large number of potential claimants and the relatively small damage suffered by potential individual claimants, it is unlikely that individual plaintiffs would endure the expense of litigation in order to bring their claims.").

Furthermore, the element of superiority is essentially satisfied by the Settlement itself. As explained by the Supreme Court in *Amchem*, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. There is no indication that Lead Counsel will encounter any difficulties in administering the Settlement of this Action. Thus, any manageability problems that may have existed here — and Lead Plaintiffs know of none — are eliminated by the Settlement. Accordingly, a class action is the superior method of adjudicating this Action.

### F.    Lead Counsel Satisfies All Requirements for Appointment as Class Counsel

Pursuant to Rule 23(g), in certifying the Class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(g)(1). In doing so, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As discussed above in regard to the adequacy requirement of Rule 23(a), Lead Counsel is suitable for appointment as Class Counsel as they are "qualified, experienced and generally able to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). As Lead Counsel, the Gross Firm has more than 50 years of experience representing plaintiffs and is highly qualified in successfully litigating securities class actions. *See* Law Offices Bernard M. Gross, P.C. website, available at http://www.bernardmgross.com. Throughout the investigation of Plaintiffs' claims and the settlement negotiations, Lead Counsel has continuously demonstrated an in-depth knowledge of the relevant legal issues and has

committed all necessary resources to effectively litigating this case on behalf of the Class, which has successfully culminated in this Settlement. *See* Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Expenses; Gross Decl., ¶¶ 31-98. Therefore, Rule 23(g) has been satisfied and Lead Counsel should be appointed as Class Counsel.

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.    The Standards for Reviewing a Proposed Settlement for Final Approval

In determining whether to approve a class action settlement, the Court must determine whether it is "fair, adequate, and reasonable, and not a product of collusion." *Joel v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). "Settlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Marsh & McLennan Cos., Inc., Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953, at *15 (S.D.N.Y. Dec. 23, 2009) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999)). The Court "determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

The Court must first review the negotiating process that produced the settlement to ensure: (1) that the settlement was the product of arm's length negotiations; and (2) that class counsel "possessed the experienced and ability, and...engaged in the discovery, necessary to effectively represent[]...the class's interests." *D'Amato*, 236 F.3d at 85 (quoting *Weinberger*, 698 F.2d at 74). "In a class-action settlement, there is a presumption of fairness, reasonableness and adequacy when the settlement is the product of 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *In re Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *15 (quoting *Sumitomo*, 189 F.R.D. at 280); *In re Initial Public Offering*

*Sec. Litig.*, 2009 U.S. Dist. LEXIS 93162, at *24, *31 (S.D.N.Y. Oct. 6, 2009) (finding that presumption of fairness, adequacy and reasonableness attached to settlement where two mediators attested that settlement was product of arm's-length negotiations by the parties' counsel who were extremely knowledgeable about the facts and law of the case).

The proposed Settlement was the result of lengthy negotiations between Lead Counsel and Defendants' counsel over several months.    Gross Decl., ¶¶ 21-35.    This included participation in a mediation chaired by a retired United States District Court Judge.  Gross Decl., ¶¶ 21-23.    Furthermore, the attorneys on both sides are not only experienced in litigating complex class actions, they are also thoroughly familiar with the factual and legal issues present in the Action.  Gross Decl., ¶ 6, 35.

Once the court determines that the negotiation process was procedurally fair, adequate and reasonable, it must determine whether the settlement terms are substantively fair, adequate and reasonable under an analysis of the factors set forth by the Second Circuit Court of Appeals in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"),[3] *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In addition to being procedurally fair, Lead Plaintiffs submit to the Court that the

---

[3]The Second Circuit has identified nine *Grinnell* factors that courts should consider in its substantive analysis in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement funding light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. *See D'Amato*, 236 F.3d at 86 (applying *Grinnell* nine-factor test to evaluate class action settlement).

Settlement is also substantively fair under the *Grinnell* factors.

### 1. The Complexity, Expense and Likely Duration of the Litigation Supports Approval of the Settlement

An analysis of the first *Grinnell* factor - the complexity, expense and likely duration of continued litigation - supports the reasonableness of the Settlement. This Court has repeatedly recognized that securities class actions are complex and expensive to prosecute. "Due to its notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006).[4]

In addition to the complications involved in establishing Defendants' liability and in proving damages in a Section 10(b) suit, this Action presents complex legal and factual issues that would require extensive deposition and trial testimony of both fact and expert witnesses, as well as third party witnesses. The Action turns on the proposed Merger between Huntsman and Hexion and requires a firm understanding of the specialty chemicals market, the prospects for the business of the combined entity and the condition of the financial and capital markets prior to and during the Class Period, all of which influenced Defendants' decision-making with respect to the proposed merger. Trial of the Action, with the probability of appeals, would be complicated,

---

[4]*See, e.g., Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Alloy, Inc., Sec. Litig.*, 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418,426 (S.D.N.Y. 2001) ("Securities litigation . . . generally involves complex issues of fact and law, and these Actions are no exception."); *Sumitomo*, 189 F.R.D. at 283 (securities litigations involving claims of manipulation are "particularly risky" and uncertain).

time-consuming and expensive.[5]  *See, e.g., In re Veeco Instruments Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y. 2007) (describing risks and expenses of trial and likely appeals); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003) (describing potential for "enormous expense" in proceeding to trial), *aff'd sub nom Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

The Settlement offers a substantial monetary recovery now, at a greatly reduced cost, for the benefit of the Class.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003)("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time, value of money, make future recoveries less valuable than this current recovery").

### 2.    The Reaction of the Class to the Settlement

The analysis of the second *Grinnell* factor, the reaction of the class, favors the Settlement, even though the time to object or file an exclusion does not run until May 3, 2010. *See* Preliminary Approval Order, ¶¶ 12, 13.  To date, while over 5,800 Notices have been mailed to potential Class Members and the Notice has been published over the PR Newswire, Gross Decl., ¶¶ 39-40, no objections to the Settlement have been received.  Lead Counsel will address any objections that are filed in the reply brief.[6]

---

[5]For example, in the recent three-month trial of *In re Vivendi Universal, S.A. Sec. Litig.*, 02-cv-5571 (RJH)(HBP) (S.D.N.Y. 2010), a securities class action that has been litigated since 2002, the jury returned a verdict for the investor class, but the defendant company has stated that it plans to appeal the verdict. Gross Decl., ¶ 38.

[6]Although the lack of objections is not dispositive of the fairness of the Settlement, it is a noteworthy element that appears to lend support for its approval. *See, e.g., D'Amato*, 236 F.3d at 86-87 (approving settlement where 18 objections were filed after notice was sent to 27,883 class members); *In re Top Tankers, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 58106, at *25 (S.D.N.Y. July 31, 2008) (finding "absence of dissent combined with the minimal number of exclusions

### 3.    The Stage of the Proceedings

An analysis of the third *Grinnell* factor, the stage of the proceedings and the amount of discovery completed, fully supports the Settlement.  Although the Action has not proceeded to the motions stage or to full-blown discovery, the discovery obtained and taken by Lead Plaintiffs, the mediation process, and the extensive work with expert consultants, have enabled Lead Plaintiffs to develop an understanding of the strengths and weaknesses of the claims and defenses that is often not achieved until summary judgment in the ordinary case.  *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (acknowledging that although little or no formal discovery had taken place, plaintiffs had sufficient information to make an informed judgment on the reasonableness of the settlement.).

"Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004).    Lead Counsel's knowledge is based on an extensive investigation and discovery, including, *inter alia:* (i) review of Huntsman's and Hexion's SEC filings, press releases, and other public statements; (ii) review of media reports about Huntsman and Hexion and the specialty chemicals market; (iii) attendance at the trials in the Delaware Litigation and the Texas Litigation; (iv) analysis of transcripts of deposition and trial testimony from the

---

militates strongly in favor of the Court's final approval of the Settlement."); *In re Merrill Lynch Tyco*, 249 F.R.D. at 134 (finding reaction of class "overwhelmingly positive" due to only 12 requests for exclusion and two objections after more than 604,000 notices were mailed to potential class members); *In re AOL Time Warner Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *34 (S.D.N.Y. Apr. 6, 2006) ("the lack of objections may well evidence the fairness of the Settlement"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (noting 48 opt-outs and two objectors from over 400,000 notices mailed to class members strongly favored approval of settlement); *In re Nortel Networks Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 93390, at *17 (S.D.N.Y. Dec. 26, 2006) (finding reaction of class favored settlement where only 217 class members opted out and only 35 objections were received in response to over 1.4 million separately mailed notices, none of which were "large (institutional) investors").

Delaware Litigation and the Texas Litigation; (v) analysis of thousands of documents produced in the Delaware Litigation and the Texas Litigation, including non-public trial exhibits; (vi) depositions of key witnesses Scott Kleinman, a Director of Hexion and partner of Apollo, and Colleen Nissl, in-house counsel for Hexion; (vii) consultation with experts; (viii) research of the applicable law, particularly disclosure obligations in the context of pending mergers; (ix) preparation of the mediation brief and participation in the mediation; and (ix) negotiation with Defendants. Gross Decl., ¶ 5.

Thus, by the time the parties entered into the Stipulation, Lead Counsel was extremely knowledgeable of the issues in the Action and the parties "have a clear view of the strengths and weaknesses of their cases." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, *20 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers*, 2008 U.S. Dist. LEXIS 58106, at *26 (finding matter had advanced to a stage where Lead Counsel had sufficient knowledge and understanding of claims and defenses to determine that the settlement would confer a benefit upon the class); *In re OCA, Inc. Securities and Derivative Litig.*, 2009 U.S. Dist. LEXIS 19210, *41 (E.D. La. March 2, 2009) (court satisfied that plaintiffs' counsel performed adequate informal discovery, including obtaining records from court proceedings related to the defendant company, for purposes of assessing "the strengths and weaknesses of their positions and to make a reasoned evaluation of whether and on what terms to settle").

### 4.    The Risk of Establishing Liability and Damages

An analysis of fourth and fifth *Grinnell* factors – the risks of establishing liability and the risks of establishing damages – was also critical in Lead Counsel's decision to resolve the Action. Securities class actions typically present significant hurdles for plaintiffs to overcome in proving liability and damages. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39

(noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *6 (finding that issues present in securities action presented significant hurdles to proving liability).

While Lead Plaintiffs believe that they could present sufficient evidence to a jury to enable them to find for Lead Plaintiffs on liability, there are significant factual and legal issues that would pose a significant risk to Lead Plaintiffs in proving their claims. Defendants have articulated defenses to Lead Plaintiffs' allegations that could be accepted by the Court or jury. Among other things, Defendants argue that Lead Plaintiffs could not establish any duty on the part of Defendants to disclose their intention to withdraw from the Merger until June 18, 2008, the date the Hexion Board, upon the advice of counsel and expert consultants who presented their findings and conclusions to the Board, voted to file the complaint in the Delaware Litigation. Gross Decl., ¶ 24. Lead Plaintiffs also face the serious risk that they would not be able to discover all of the critical facts surrounding certain of Defendants' decisions and actions because many of the conversations and meetings were attended by counsel and Defendants have invoked the attorney-client privilege to avoid the risk of waiver. For example, at the deposition of Scott Kleinman the witness was instructed not to answer certain relevant questions because to do so would invade the attorney-client privilege. Gross Decl., ¶ 31. Although Lead Plaintiffs believe that they have good arguments for piercing that privilege, their success is far from assured. Gross Decl., ¶ 31.

In addition, proof of scienter posed a significant hurdle for many of the same reasons. *See Adair v. Bristol Tech. Sys.*, 1999 U.S. Dist. LEXIS 17627, at *6 (S.D.N.Y. Nov. 16, 1999) (approving settlement while acknowledging that plaintiffs' burden of proving defendants acted with scienter is "a difficult burden to meet"). The issue of duty to disclose and scienter are

15

intertwined in this case, perhaps to a greater degree than in the typical securities fraud suit. Gross Decl., ¶ 24. Notably, two different courts faced with different failed merger situations recently dismissed complaints that failed to plead specific facts to suggest that the acquiring party did not intend to carry out the merger. *See Amida Capital Management II, LLC v. Cerberus*, 2009 U.S. Dist. LEXIS 105738, *34 (S.D.N.Y. Nov. 10, 2009); *First New York Securities, LLC v. United Rentals, Inc.*, 2009 U.S. Dist. LEXIS 78605 (D. Conn. Aug. 24, 2009). Here, the discovery did not reveal a bright line as to when Defendants had made a decision with respect to the proposed merger that may have arguably required disclosure under the prevailing law. Gross Decl., ¶ 32. Defendants firmly stated, in discovery, and in the mediation, that until the Hexion Board voted on June 18, 2008, no firm decision to change their position with respect to the proposed merger had been made. *Id.* Discovery has shown that, throughout the Class Period, Defendants were taking steps to proceed to close the proposed merger at the same time as they were considering the solvency of the combined entity. *Id.*

Lead Plaintiffs' ability to prove sizeable damages also presented somewhat unique hurdles. Lead Plaintiffs believed that they could readily prove the materiality of, and the causal connection between the market price for Huntsman common stock and the decision of Hexion to walk away from the merger. Gross Decl., ¶ 25. However, numerous issues were present which, based on the jury's acceptance of the various and competing expert opinions, could dramatically impact the amount of damages Lead Plaintiffs could prove. *Id.* For example, there was the incontrovertible fact that the range of market prices of Huntsman common stock during the Class Period, $21 - $22, was significantly below the $28 offering price by Hexion. *Id.* This could readily lead experts to conclude that the market had seriously begun to question whether the merger would close. *Id.* In addition, the volume of trading in Huntsman common stock raised

certain issues impacting the number of shares traded during the Class Period. Gross Decl., ¶ 27. Among those issues was the presence of institutional traders engaging in arbitrage and the after-hours market on the last day of the Class period when the trading volume saw a significant spike. *Id.* If the volume on June 18, 2008, were reduced by after-hours trading volume, as Defendants and their expert argue occurred, by which time the market knew of the decision by Defendants to walk away from the proposed merger, the shares available to participate in the Class Period would be significantly reduced. *Id.*

These and other issues related to damages would lead the parties' experts to offer competing testimony as to the amount of damages. A jury would have to then choose from among those opinions. As this Court has observed:

> Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages.... In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (citations omitted). Thus, Lead Plaintiffs faced a significant risk in proving damages. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 2003 U.S. Dist. LEXIS 17090, at \*11-12(S.D.N.Y. 2003) (noting difficulty of proving damages in securities cases).

The foregoing risks, while not a complete recitation of all the risks of establishing liability and damages, balanced against the Class's recovery from the Settlement, weighs heavily in favor of the approval of the Settlement.

### 5.    The Risks of Maintaining the Class Action Through Trial

An analysis of the sixth *Grinnell* factor, the risk of maintaining the Class through trial, also supports the Settlement. The positions advanced at the mediation strongly suggest that

Defendants would challenge the suitability of the Class and of the Lead Plaintiffs. Lead Plaintiffs, however, do not believe that those expected challenges posed serious risks to class certification. Lead Plaintiffs also recognize, however, that Defendants would have likely taken any opportunity to argue for decertification as the Action progressed. "Further, there is no assurance of maintaining certification of a class, as courts may exercise their discretion [under Rule 23] to re-evaluate the appropriateness of class certification at any time." *See In re Top Tankers*, 2008 U.S. Dist. LEXIS 58106, at *27 (finding settlement avoids uncertainty with respect to decertification); *In re PNC Fin. Servs. Group, Sec. Litig.*, 440 F. Supp. 2d 421, 435 (W.D. Pa. 2006) (finding risk of decertification supported approval of settlement because defendants' "arguments in relation to the definition of the class and plaintiffs' ability to prove 'loss causation' have the potential to resurface even after initial class certification.").

As to the Class Period, Lead Plaintiffs also believe it too is proper. While the Class Period in the Complaint began with Hexion's press release and SEC Form 10-Q on May 14, 2008, Huntsman issued a press release on May 9, 2008, disclosing its earnings and providing a general update on the Merger. Gross Decl., ¶ 28. On this same date, Apollo met with its legal counsel to discuss whether a Material Adverse Event had occurred under the terms of the Merger agreement. *Id.* As noted in *Hexion Specialty Chems., Inc. v. Huntsman Corp.*, the Delaware Chancery Court found that "after May 9, 2008, Apollo and its counsel began to follow a carefully designed plan to obtain an insolvency opinion, publish that opinion (which it knew, or reasonably should have known, would frustrate the financing), and claim Hexion did not 'knowingly and intentionally' breach its contractual obligations to close [on the Proposed merger] due to the impossibility of obtaining financing without a solvency certificate." 965 A.2d 715, 725 (Del. Ch. 2008). This creates an issue as to when Defendants' disclosure duties, if

indeed they had any, arose.  Therefore, the parties have agreed to a Class Period for settlement

purposes starting on May 9, 2008 and ending on June 18, 2008.

### 6.    The Ability of Defendants to Withstand a Greater Judgment

Although the Court may also consider a defendant's ability to withstand a judgment

greater than that secured by settlement, the seventh *Grinnell* factor, it is not generally one of the

determining factors. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 U.S. Dist. LEXIS 99840, at

*6-7 (S.D.N.Y. Nov. 20, 2008) ("Lead Plaintiffs concede that Defendants could pay more than

the $16.5 million they have agreed to pay in this settlement.  Nonetheless, the Second Circuit has

held that this factor is not dispositive and need not affect the conclusion that the settlement is

within the range of reasonableness.").  Here, it is believed that Defendants could withstand a

judgment in excess of the amount of the Settlement.  However, courts generally do not find the

ability of a defendant to withstand a greater judgment to be an impediment to settlement when

the other factors favor the settlement, and in fact, the ability of defendants to pay more money

does not render a settlement unreasonable.  *See D'Amato,* 236 F.3d at 86 (upholding approval of

settlement despite defendants' ability to withstand greater judgment, where other *Grinnell* factors

weigh in favor of settlement); *In re Sony SXRD Rear Projection TV Class Action Litig.*, 2008

U.S. Dist. LEXIS 36093, at *23 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty

its coffers' before a settlement can be found adequate.").

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

An analysis of the eighth and ninth *Grinnell* factors, the range of reasonableness of the

settlement fund in light of the best possible recovery and the attendant risks in litigation, weighs

in support of the Settlement.  The adequacy of the amount offered in settlement must be judged

"not in comparison with the possible recovery in the best of all possible worlds, but rather in

light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.,* 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F. 2d 145 (2d Cir. 1987). The determination of a reasonable settlement "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Rather, the court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in this context of the legal and practical obstacles to obtaining a large recovery"); *Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *12-*13 (noting few cases tried before a jury result in full amount of damages claimed).

Here, a settlement that provides for a recovery between 7.2% and 22.5% of the estimated range of total damages, Gross Decl., ¶ 34, is well within the range of reasonableness of similarly-sized securities class actions that have recently settled. *See* Ellen M. Ryan & Laura E. Simmons, Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS: 2008 REVIEW AND ANALYSIS, at 6, available at http://securities.cornerstone.com/pdf_Cornerstone_Research_Settlements_ 2008_Analysis.pdf (reporting that in 2008, the median settlement as a percentage of estimated damages was between 2.8% and 11.7% in securities class actions where estimated damages ranged between less than $50 up to $250 million). Based upon the number of shares of Huntsman common stock estimated to have been damaged during the Class Period, the estimated average recovery of approximately $0.83 per share to Class Members (prior to deducting any attorneys' fees and expenses that the Court might award), is believed to be reasonable. *See*

Notice at page 1; Gross Decl., ¶ 50. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 n.2 ("In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. As the court said in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, "[t]he settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." 228 F.R.D. 541, 566 (S.D. Tex. 2005); *see AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where settlement fund in escrow earning interest "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Here, the Settlement is within the range of reasonableness in light of the attendant risks of pursuing the Action to trial.

## V.    THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND ADEQUATE

The standard for approval of a plan of distribution in the Second Circuit is the same as the standard for approving a settlement, "namely, it must be fair and adequate." *Maley v. Del Global Techs. Corp*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "As a general rule, the adequacy of an allocation plan turns on...whether the proposed appointment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc.*

*v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) (citation omitted). A plan of distribution "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2008 U.S. Dist. LEXIS 57544, at *16 (S.D.N.Y July 30, 2008) (citation omitted).[7]

The Plan of Distribution, which was fully described in the Notice (beginning at page 9), has a rational basis and was formulated by Lead Counsel, in consultation with experts, ensuring its fairness and reliability.[8] *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39. Under the Plan of Distribution, recovery is provided only to those Class Members who purchased Huntsman common stock or call options or sold put options during the Class Period and held such securities at the close of business on June 18, 2008. *See* Notice at page 10; Gross Decl., ¶ 42. The basis for this limitation is rooted in the opinion in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), because Class Members who sold their securities before disclosure of the alleged fraud on June 18, 2008, do not have legally cognizable losses.

Each Authorized Claimant (as defined in the Stipulation, ¶ 1.2) will receive a *pro rata* share of the Net Settlement Fund. Gross Decl., ¶ 43. In other words, each Class Member will receive a proportional share of the Net Settlement Fund based upon his or her Recognized Loss and the aggregate Recognized Loss of all Class Members. *See In re Merrill Lynch & Co., Inc.*

---

[7] *See also WorldCom*, 388 F. Supp. 2d at 344 (same); *Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *15 (giving considerable weight to opinion of counsel in making its decision to approve plan of allocation); *In re NASDAQ Market-Makers Antitrust Litig.*, 2000 U.S. Dist. LEXIS 304, at *6 (S.D.N.Y. Jan. 12, 2000) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel") (citation omitted); *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd*, 117 F.2d 721 (2d Cir. 1997) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.").

[8] The Plan of Distribution of the Net Settlement Fund is not a term of the Stipulation. Thus, it can be changed at final approval without any impact on the viability of the Settlement. Gross Decl., ¶ 41.

*Research Reports Sec. Litig.*, 2007 U.S. Dist. LEXIS 9450, at *39 (S.D.N.Y. February 1, 2007)("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is reasonable.").

For purchasers of common stock who continued to hold their shares at the close of trading on June 18, 2008, their recognized loss shall be their purchase price less $12.86, the closing price of Huntsman common stock on June 19, 2008. *See* Notice at page 10; Gross Decl., ¶ 44. For call option purchasers who continued to hold their options at the close of trading on June 18, 2008, their recognized loss shall be their purchase price of the option less the closing price of the call option at the close of trading on June 19, 2008. *Id.*; Gross Decl., ¶ 45. For sellers of put options who continued to hold those options at the close of trading on June 18, 2008, their recognized loss shall be the price of the option as of the close of trading on June 19, 2008, less the price they received on the date of sale of the put option. *Id.*; Gross Decl., ¶ 46. The Recognized Loss is calculated excluding commissions.[9] *Id.*

Additionally, for Class Members who purchased common stock or call options or sold put options from May 9-13, 2008, their Recognized Loss will be 20% of the applicable Recognized Loss calculation. *See* Notice at page 10; Gross Decl., ¶ 47. This 20% value is based on the information uncovered to date in connection with the fact that May 9, 2008 was the date of the filing by Huntsman of its earnings release and whether Defendants had any disclosure duties under the federal securities laws with respect to the Huntsman release is "ambivalent" at best. *See Amida Capital Management*, 2009 U.S. Dist. LEXIS 105738, *11-18.

---

[9] For Class Members who engaged in multiple purchases and/or sales of Huntsman common stock or options during the Class Period, the first-in first-out method ("FIFO") will be applied to determine the relevant purchases and sales in calculating any Recognized Claim. *See* Notice at page 10; Gross Decl., ¶ 448. No distribution will be made on a claim where the potential distribution amount is less than $10.00. *Id.* at page 11; Gross Decl., ¶ 49.

Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they executed their transactions. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39; *Global Crossing*, 225 F.R.D. at 462. It is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). In *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993), Judge Pollack noted, "[i]n numerous cases courts have approved settlements where the class members receive different percentages of recovery to take into account different factors." *Id.* at 67 (citing *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396 at 1411(S.D.N.Y. 1985) ("if one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement…in favor of plaintiffs whose claims comprise the set [of claims]' that was more likely to succeed").

Accordingly, Lead Counsel believes that the Plan of Distribution is fair and reasonable and respectfully submits that it should be approved by the Court.

## VI.  CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court approve the Settlement and enter the proposed Judgment and Order of Dismissal with Prejudice in connection with the Settlement proceedings.

Dated: March 5, 2010                **LAW OFFICES BERNARD M GROSS, P.C.**

                                                  **/s/ Deborah R. Gross**
                                      **DEBORAH R. GROSS**
                                      Suite 450, Wanamaker Bldg., 100 Penn Square East
                                      Philadelphia, PA 19107
                                      Telephone: 215-561-3600/Fax: 215-561-3000
                                      Lead Counsel for Lead Plaintiffs

24