USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/19/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANDRA LIFSCHITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>HEXION SPECIALTY CHEMICALS, INC., CRAIG O. MORRISON, and JOSHUA J. HARRIS,<br><br>    Defendants. | Civil Action No.<br><br>08 Civ. 6394 (RMB)<br><br><br>JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE |

This matter came before the Court for hearing pursuant to the Order of this Court, dated January 21, 2010, on the application of the Settling Parties for approval of the settlement set forth in the Stipulation of Settlement (the "Stipulation") dated January 11, 2010 (the "Settlement"). Due and adequate notice having been given to the Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1. The Court, for purposes of this Judgment and Order of Dismissal with Prejudice (the "Judgment"), adopts the following defined terms:

    (a) "Action" means the putative securities class action styled *Lifschitz v. Hexion Specialty Chemicals, et al.*, Civil Action No. 08-6394 (RMB).

    (b) "Authorized Claimant" means any member of the Class whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

    (c) "Claims Administrator" means the firm of Valley Forge Administrative Services.

    (d) "Class" means all persons or entities who purchased the common stock or call options or sold put options of Huntsman Corporation ("Huntsman") between May 9, 2008 and June 18, 2008, inclusive (the "Class Period"), which Class shall be certified for settlement purposes only (the "Settlement Class"). The class shall exclude:

        (i) Persons or entities who submit valid and timely requests for exclusion from the Class; and

        (ii) Defendants, members of the immediate family of any such Defendant, any entity which has or had a controlling interest in any Defendant or in which any

2

Defendant has or had a controlling interest, their respective officers and directors, Apollo Global Management, LLC ("Apollo Global"), any partner of or person or entity affiliated with Apollo Global, including, without limitation, any fund established by Apollo Global and/or any person or entity who invested in such fund (Apollo Global and all such partners, persons, entities and funds being collectively referred to as "Apollo"), Huntsman, Jon M. Huntsman, Peter R. Huntsman Family Holdings Company LLC, The Jon and Karen Huntsman Foundation, Karen H. Huntsman Inheritance Trust, Huntsman Financial Corporation, Brynn B. Huntsman, as Custodian under The Utah Uniform Transfers to Minors Act, for the benefit of Rebecca Brynn Huntsman, Rachel Brynn Huntsman, Caroline Brynn Huntsman, Amber Brynn Huntsman, Virginia Brynn Huntsman, and James B. Huntsman, Credit Suisse Securities LLC, and Deutsche Bank Securities, Inc., and officers, directors, legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person.

(e) "Class Member" means a person who falls within the definition of the Class as set forth in ¶ 1.4 of the Stipulation.

(f) "Defendants" mean Hexion Specialty Chemicals, Inc. ("Hexion"), Craig O. Morrison ("Morrison") and Joshua J. Harris ("Harris").

(g) "Effective Date" means the first date by which all of the events and conditions specified in ¶ 7.1 of the Stipulation have been met and have occurred.

(h) "Escrow Agent" means the Court Registry Investment System ("CRIS").

(i) "Final" means when the last of the following with respect to this Judgment approving the Settlement shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment without any

3

appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, the determination of that motion or appeal in such a manner as to permit the consummation of the Settlement, in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other writ that may be filed in connection with approval of this Settlement, but shall not include any appeal which concerns only the issue of attorneys' fees and expenses or any Plan of Distribution of the Settlement Fund.

(j)  "Lead Plaintiffs" means Sandra Lifschitz and Robert Burch.

(k)  "Person" means an individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and his, her or its spouses, heirs, predecessors, successors, representatives, or assignees.

(l)  "Plaintiffs' Lead Counsel" means the Law Offices Bernard M. Gross, P.C., Suite 450, Wanamaker Building, 100 Penn Square East, Philadelphia, Pennsylvania 19107.

(m)  "Plan of Distribution," as further defined in the Notice of Pendency and Proposed Settlement of Class Action, Settlement Fairness Hearing and Application for Attorneys' Fees and Expenses, means a plan or formula of allocation of the Net Settlement Fund. The Plan of Distribution is not part of the Stipulation and the Released Persons shall have no responsibility or liability with respect thereto.

(n)  "Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liabilities

4

whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, matured or un-matured, at law or in equity, whether class or individual in nature, including but not limited to, both known claims and Unknown Claims, (i) that have been asserted in this Action, (ii) that could have been asserted in this Action or in any other forum by Lead Plaintiffs or by any member of the Class, as such or in any other capacity, against any of the Released Persons that arise out of, relate to or are based upon, in whole or in part, any of the allegations, transactions, facts, matters or occurrences, representations or omissions, set forth or referred to in the Complaint filed in this Action by Lead Plaintiffs, or the purchase of any common stock or call options or the sale of put options of Huntsman during the Class Period, or (iii) that relate to the administration or distribution of the Net Settlement Fund.

(o) "Released Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, foreign, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Defendants, or the heirs, successors and assigns of any of them against the Lead Plaintiffs, any of the Class Members, or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action, excluding any claims for breaches of this Stipulation.

(p) "Released Persons" means each and all of the Defendants and Apollo, as well as each and all of their present or former parents, subsidiaries, affiliates (as defined in 17 C.F.R. §210.1-02(b)), successors and assigns, and each and all of the present or former officers, directors, employees, agents, attorneys, accountants, financial advisors, commercial bank

lenders, insurers, investment bankers, representatives, general and limited partners and partnerships, heirs, executors, administrators, successors and assigns of each of them.

(q) "Settlement Fund" means Eighteen Million Dollars ($18,000,000.00) in cash.

(r) "Settling Parties" means, collectively, the Defendants and the Lead Plaintiffs on behalf of themselves and the Class Members.

(s) "Unknown Claims" means any and all Released Claims which the Lead Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, and any Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her or its favor, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement, including but not limited to, any decision whether to request exclusion from the Class or to object to any aspect of this Settlement. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiffs and Defendants shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the

6

subject matter of the Released Claims, but the Lead Plaintiffs shall expressly, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Lead Plaintiffs and Defendants acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and was a key element of the Settlement of which this Release is a part.

(t)    Any capitalized term used herein and not defined should be construed consistent with the definitions set forth in the Stipulation.

2.    This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3.    The Court finds and determines that the Action may proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons who purchased the common stock or call options or sold put options of Huntsman during the Class Period. The Class excludes Defendants, members of the immediate family of any such Defendant, any entity which has or had a controlling interest in any Defendant or in which any Defendant has or had a controlling interest, their respective officers and directors, Apollo, Huntsman, Jon M. Huntsman, Peter R. Huntsman Family Holdings Company LLC, The Jon and Karen Huntsman Foundation, Karen H. Huntsman Inheritance

Trust, Huntsman Financial Corporation, Brynn B. Huntsman, as Custodian under The Utah Uniform Transfers to Minors Act, for the benefit of Rebecca Brynn Huntsman, Rachel Brynn Huntsman, Caroline Brynn Huntsman, Amber Brynn Huntsman, Virginia Brynn Huntsman, and James B. Huntsman, Credit Suisse Securities LLC, and Deutsche Bank Securities, Inc., and officers, directors, legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person.

4. The Court further finds and determines, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, that those persons who purchased Huntsman common stock or call options or sold Huntsman put options during the Class Period are so numerous that joinder is impracticable, that there are issues of law or fact common to the Class, that the claims of Lead Plaintiffs are typical of the Class, and that Lead Plaintiffs and Plaintiffs' Lead Counsel will fairly and adequately represent the interests of the Class Members in enforcing their rights in the Action.

5. The Court also finds that under Rule 23(b)(3) of the Federal Rules of Civil Procedure, questions of law or fact common to the Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the subject matter of the Action.

6. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement set forth in the Stipulation and finds that said Settlement is, in all respects, fair, reasonable and adequate to the Class.

7. The Court finds that the Stipulation and Settlement are fair, reasonable and adequate as to each of the Class Members, and that the Stipulation and Settlement are hereby

finally approved in all respects, and the Settling Parties are hereby directed to perform its terms, including making payment to Class Members forthwith.

8. The Action and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice as to the Lead Plaintiffs and the Class Members, as against each and all of the Released Persons. The Settling Parties are to bear their own costs, except as otherwise provided in the Stipulation.

9. Upon the Effective Date, the Lead Plaintiffs and the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged against the Released Persons (whether or not such Class Members execute and deliver the Proof of Claim and Release forms) all Released Claims (including Unknown Claims), as well as any other claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Action or the Released Claims.

10. Upon the Effective Date, the Lead Plaintiffs and the Class Members, and their predecessors, successors, agents, representatives, attorneys and affiliates, and the heirs, executors, administrators, successors and assigns of each of them, directly or indirectly, individually, derivatively, representatively or in any other capacity, shall be permanently barred and enjoined from the assertion, institution, maintenance, prosecution or enforcement against Defendants, or any other Released Persons, in any state or federal court or arbitral forum, or in the court or other tribunal of any foreign jurisdiction, of any and all Released Claims (including Unknown Claims) as well as any other claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Action or the Released Claims.

11. Upon the Effective Date, each of the Defendants shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and

discharged each and all of the Lead Plaintiffs, Class Members and Plaintiffs' Lead Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.

12. The "Notice of Pendency and Proposed Settlement of Class Action, Settlement Fairness Hearing and Application for Attorneys' Fees and Expenses" ("Notice"), given to the Class, including the individual notice to all Class Members who could be identified through reasonable effort, was the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation, to all Persons entitled to such Notice. Said Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, and the requirements of due process.

13. The Plan of Distribution is approved as fair and reasonable, and the Claims Administrator is directed to administer the Net Settlement Fund in accordance with its terms.

14. Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Persons, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons, or (c) is or may be deemed to be, or may be used as an admission, or evidence that any claims asserted by Lead Plaintiffs were not valid or that the amount recoverable was not greater than the Settlement amount in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. The Released

Persons may file the Stipulation and/or the Judgment from this Action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

15. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Net Settlement Fund, including interest earned thereon; (b) disposition of the Gross Settlement Fund; and (c) all parties hereto for the purpose of construing, enforcing and administering the Stipulation.

16. The Court finds that during the course of the Action, the Settling Parties and their respective counsel appear to have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

17. As is more fully explained in Exhibit A hereto, the Court awards Plaintiffs' Counsel attorneys' fees in an amount equal to 7% of the Settlement Fund (i.e., $1,260,000) and expenses of $78,018.32. This award shall be deducted from the Settlement Fund and paid to Plaintiffs' Counsel one (1) business day following the mailing of all checks to eligible Class Members from the Net Settlement Fund.

18. As is more fully explained in Exhibit A hereto, the Claims Administrator's request for payment of its fees and expenses incurred to date in connection with the administration of the Settlement (including, among other things, giving notice to the Class) in the amount of $34,472.60 is approved. These expenses shall be deducted from the Settlement Fund and paid to the Claims Administrator one (1) business day following the mailing of all checks to eligible Class Members from the Net Settlement Fund. The Claims Administrator may make a

supplemental application prior to the distribution of the Net Settlement Fund concerning any additional reasonable claims administration expenses.

19. In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, or the Stipulation terminates according to its provisions, or in the event that the Gross Settlement Fund, or any portion thereof, is returned to the Defendants or their insurers, or this Judgment does not become Final, then this Judgment shall be rendered null and void and shall be vacated and, in such event, all orders entered and releases given in connection herewith shall be null and void, *nunc pro tunc*, except that (1) any modifications, reversal, or vacatur of the award of attorneys' fees and expenses to Plaintiffs' Lead Counsel on appeal or in any further motions in this Court shall in no way disturb or affect any other part of this Judgment, including the timing of payment to Class Members; and (2) any further proceedings, whether in this Court or on appeal, related to the Plan of Distribution, shall in no way disturb or affect any other part of this Judgment, including the timing of payment to Class Members.

**DATED: May 19, 2010**          *RMB* (signature)
                              **THE HONORABLE RICHARD M. BERMAN**
                              **UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SANDRA LIFSCHITZ, Individually and on  :
Behalf of All Others Similarly Situated,  :
:
                       Plaintiff,  :
:
                -against-  :        **EXHIBIT A**
:        **ATTORNEYS' FEES AND**
HEXION SPECIALTY CHEMICALS, INC.,  :        **COSTS AND CLAIMS**
CRAIG O. MORRISON, and JOSHUA J.  :        **ADMINISTRATION EXPENSES**
HARRIS,  :
:
                       Defendants.  :
------------------------------------------------------------X

### I.    Introduction

Plaintiffs' Counsel – i.e., Law Offices Bernard M. Gross, P.C. – seeks attorneys' fees in the amount of 20% of the $18 million Settlement Fund, plus $78,018.32 in expenses, which would total approximately $3,678,018.32 (fees and expenses).[1] (See Lead Counsel's Mem. in Supp. of Mot. for an Award of Attorneys' Fees & Reimbursement of Expenses, dated Mar. 3, 2010 ("Mem."), at 1.) Plaintiffs' Counsel also seeks "interest earned in the [Court Registry Investment System] account from the date of the order awarding attorneys' fees to the date fees are paid out, less any taxes and expenses." (Mem. at 20.) Plaintiffs' Counsel claims a lodestar of $840,900.00 based upon 1,460.25 hours worked by, among others, three senior attorneys and three junior attorneys, (see Decl. of Deborah R. Gross, dated Mar. 3, 2010 ("Gross Decl."), ¶¶ 56–98.) Counsel also seeks a lodestar "multiplier" of approximately 4.28, i.e., 4.28 times its actual billings. (See Gross Decl. ¶ 55.)

---

[1]    By Order, dated September 18, 2003, the Court named Law Offices Bernard M. Gross, P.C. as lead counsel ("Plaintiffs' Counsel"). (See Order, dated Sept. 18, 2003.)

Plaintiffs' Counsel argues that the fee application should be granted because, among other reasons: (1) this class action "presented difficult issues of intent in the high-stakes business of a multi-billion dollar merger during an extraordinary period of economic upheaval"; (2) "Lead Plaintiffs' burden of proof on the critical liability and damage issues . . . presented serious risks"; and (3) Plaintiffs' Counsel "achieved an excellent cash settlement for the Class in a relatively short amount of time[.]" (Mem. at 12, 14, 20.)

**The Court, for the reasons set forth below, finds that the requested award of $3,678,018.32 in legal fees and expenses, including a 4.28 multiplier, is excessive.**

## II.  Legal Standard

A party seeking attorneys' fees bears the burden of establishing entitlement to and the reasonableness of an award. See Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999) (citation omitted); see also Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." Id. Under the percentage method of awarding legal fees, the "court sets some percentage of the recovery as a fee," but "look[s] to the same 'less objective' factors that are used to determine [a] multiplier for the lodestar." Id.; see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 123 (2d Cir. 2005).

"[N]o matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" Goldberger, 209 F.3d at 50 (citation omitted).

### III. Analysis

Employing the percentage method of fixing attorney compensation (while relying on the lode-star method as a "cross-check"), the Court finds, for reasons that follow, that 7% of the Settlement Fund is a fair and reasonable legal fee – not 20% – under Goldberger and related cases. This would result in legal fees of $1.26 million plus expenses of $78,018.32 vis-à-vis a Settlement Fund of $18 million. This result, which exceeds Plaintiffs' Counsel's lodestar, serves the dual purpose of encouraging counsel to bring appropriate cases and not granting fee awards that are excessive. See Goldberger, 209 F.3d at 53.

Time and Labor

The first Goldberger factor relates to "the time and labor expended by counsel." See id. at 50. Because the Court is awarding fees on a percentage basis, the Court need not "exhaustively scrutinize" counsel's hourly submissions, id. at 49–50, but even after a cursory review of the time spent for specific tasks, one finds what appear to be some excessive hours spent and inappropriate staffing. See In re KeySpan Corp. Sec. Litig., No. 01 Civ. 5852, 2005 U.S. Dist. LEXIS 29068, at *16 (E.D.N.Y. Aug. 25, 2005). Three senior attorneys, whose hourly rates range from $675 to $695, billed approximately 60% of the total time. The majority of the remaining 40% of the time was billed by three junior attorneys at rates of $450 to $495 an hour. It appears that some of the work done by senior attorneys could have been performed by more junior attorneys or paralegals at lower billing rates. For example, Bernard M. Gross, Deborah R. Gross, and Robert P. Frutkin (charging rates of $675 to $695 per hour) billed for "factual research"; "[r]eview news articles"; "[l]egal research"; "[d]raft opposition"; "[d]raft Complaint"; "draft letter"; and "[r]eview media stories," tasks which could have been performed by others at a significantly lower cost. For another example, some of the time entries are too

3

vague for meaningful review, including, among other things, "settlement issues"; "research"; and "notice issues." See In re Zyprexa Prods. Liab. Litig., No. 04 MD 1596, 2008 U.S. Dist. LEXIS 33090, at *100 (E.D.N.Y. Apr. 22, 2008) (reducing lodestar based upon vague entries such as "review various emails, correspondence, documents"). As another example, Plaintiffs' Counsel appears to have billed travel time at full hourly rates. (See, e.g., Law Offices Bernard M. Gross, P.C. Invoice #10029, dated May 5, 2010, at 6–7, 9.) "However when determining attorneys' fees, courts in the Southern District of New York . . . customarily reduce the amount awarded for travel to at least 50% of that rate." In re PaineWebber Ltd. P'ships Litig., No. 94 Civ. 8547, 2003 U.S. Dist. LEXIS 13377, at *14 (S.D.N.Y. Aug. 4, 2003).

Magnitude and Risk

As to the second and third Goldberger factors, although the Court recognizes that this class action "presented difficult issues of intent in the high-stakes business of a multi-billion dollar merger during an extraordinary period of economic upheaval," (Mem. at 12), the Court finds, on balance, that the issues faced by Lead Plaintiffs were not significantly different or greater than those faced by plaintiffs in other similar securities class action litigations. See Taft v. Ackermans, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *29 (S.D.N.Y. Jan. 31, 2007). Moreover, "all but a small percentage of securities class actions result in settlements; securities class actions generally pose a small risk of non-recovery." In re Renaissance Holdings Sec. Litig., No. 05 Civ. 6764, 2008 U.S. Dist. LEXIS 3652, at *12 (S.D.N.Y. Jan. 8, 2008). While Plaintiffs presented the following as complexities, they are in reality part and parcel of many securities litigations: (i) uncertainty as to whether Defendants had any obligations to the class under the federal securities laws, (ii) the "interplay between attorney client privilege and intent"; and (iii) "complex discovery." (Mem. at 12–13.)

4

### Quality of the Representation

As to the fourth Goldberger factor – quality of the representation – the Court confirms that Plaintiffs' Counsel was professional and competent. But this is as it should be, i.e., as expected. Counsel's primary work in this matter, apart from discovery, was successfully defending against a challenge to the appointment of Lead Plaintiffs, and participating in a mediation and settlement negotiations. No motion to dismiss, no motion for summary judgment, and no motion for class certification was filed. See Lea v. Cypress Collections, No. C 06-4288, 2007 WL 988184, at *1 (N.D. Cal. Apr. 2, 2007) ("No dispositive motion practice occurred in the case."). These should not be particularly difficult assignments for experienced class action counsel who have done their homework before filing their case. See Taft, 2007 U.S. Dist. LEXIS 9144, at *29.

### Requested Fee in Relation to the Settlement

With respect to the fifth Goldberger factor, the Court finds that a 7% fee is reasonable under the circumstances of this case and is consistent with the fees granted in other securities cases. See Goldberger, 209 F.3d at 44 (affirming award of 4% of settlement fund); In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d 229, 231 (S.D.N.Y. 2005) (awarding 4% of settlement fund); see also Hall v. Children's Place Retail Stores, Inc., 669 F. Supp. 2d 399, 403 (S.D.N.Y. 2009) ("A review of . . . recent[] cases reveals a trend toward awarding more modest fees."); In re Twinlab Corp. Sec. Litig., 187 F. Supp. 2d 80, 87 (E.D.N.Y. 2002) (observing an "emerging trend within the Second Circuit of awarding attorneys considerably less than 30% of common funds in securities class actions, even where there is considerable contingency risk").

Public Policy Considerations

As to the sixth Goldberger factor, a fee award of 7% of the Settlement Fund both encourages counsel to pursue securities litigations and helps ensure against the specter of excessive fees. See Klein ex rel. SICOR, Inc. v. Salvi, No. 02 Civ. 1862, 2004 WL 596109, at *10–11 (S.D.N.Y. Mar. 30, 2004); see also In re Dreyfus Aggressive Growth Mut. Fund Litig., No. 98 Civ. 4318, 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001). This result balances the "overarching concern for moderation" with respect to attorneys' fees with the public policy encouraging the enforcement of the securities laws. See Goldberger, 209 F.3d at 53.

The reasonableness of a $1,260,000 legal fee award is confirmed by a lodestar analysis "cross-check." Id. at 50. The hourly fees of Plaintiffs' Counsel are generous, especially considering that senior attorneys billed (at $675 to $695) approximately 60% of the total hours and, as noted, could have "delegate[d] [more of their] work to junior, less expensive attorneys." Rossa, 2006 U.S. Dist. LEXIS 27127, at *11–12; see also In re Dreyfus Aggressive Growth Mut. Fund Litig., 2001 WL 709262, at *7. The hourly rates charged for more junior attorneys – ranging from $450 to $495 – are also generous and these billable rates may have "inflated the lodestar[.]" Steinberg v. Nationwise Mut. Ins. Co., No. 05 Civ. 3340, 2009 U.S. Dist. LEXIS 37782, at *14 (E.D.N.Y. May 4, 2009).

As noted, the fees award proposed by Plaintiffs' Counsel would represent a multiplier of approximately 4.28 which is <u>much</u> higher than appropriate and higher than the average in this District. See In re AOL Time Warner, Inc. Sec. Litig., No. 02 Civ. 5575, 2006 WL 3057232, at *22 (S.D.N.Y. Oct. 25, 2006) ("One district judge computed an average multiplier of 1.44, after conducting an analysis of 49 federal securities law actions litigated within the Second Circuit."). By contrast, the Court's award reflects a multiplier of approximately 1.50 which is not out of line

6

with other cases recently decided in this Circuit. See In re Arakis Energy Corp. Sec. Litig., No. 95 Civ. 3431, 2001 WL 1590512, at *15 (E.D.N.Y. Oct. 31, 2001) ("Nor would a multiplier of 1.2 deviate materially from post-Goldberger decisions of courts within the Second Circuit as to whether or not to apply a multiplier to a given lodestar."); see also Carlson v. Xerox Corp., 596 F. Supp. 2d 400, 413 (D. Conn. 2009) (multiplier of 1.25); Brown v. Steinberg, No. 84 Civ. 4654, 1990 WL 161023, at *2 (S.D.N.Y. 1990) (multiplier of 1.13).[2]

Plaintiffs' Counsel's request for the reimbursement of expenses in the amount of $78,018.32 appears reasonable. See In re Ashanti Goldfields Sec. Litig., No. 00 Civ. 717, 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."). The requested expenses consist of, among other things, payment of experts and consultants ($51,495.82), photocopying ($964.60), legal research ($2,427.28), transportation and lodging ($5,465.67), mediation expenses ($10,175.00), and payments to court reporters ($5,940.10). (See Gross Decl. ¶¶ 99–103 & Ex. B); see also In re Ashanti Goldfields Sec. Litig., 2005 WL 3050284, at *5 ("By far the largest expense . . . was for the services of expert witnesses . . . . This is not unusual in securities litigation actions.").

The Court grants Plaintiffs' Counsel's request for interest on the attorneys' fees from the date of the judgment to the date of payment. See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("Interest will be allowed from the date of the judgment to be entered hereon, to the date of payment at the net rate of return earned by the Settlement Fund.").

### Claims Administrator's Expenses

The Claims Administrator has submitted documentation for $34,472.60 in fees and out-

---

[2] It is somewhat unseemly, in the Court's view, that (already) well paid counsel have come to expect a bonus for work which they do in the ordinary course of their legal business.

of-pocket expenses incurred through May 10, 2010 which do not appear unreasonable. (See Aff. of Michael B. Miller, dated May 10, 2010, ¶ 10 & Ex. C); see also In re Gilat Satellite Networks, Ltd., No. 02 Civ. 1510, 2009 U.S. Dist. LEXIS 25109, at *20 (E.D.N.Y. Mar. 25, 2009) (approving claims administration fees and expenses); In re Worldcom, Inc. Sec. Litig., 388 F. Supp. 2d 319, 333 n.18, 360 (S.D.N.Y. 2005).

Prior to the distribution of the Settlement Fund, the Claims Administrator may submit a supplemental application concerning any additional reasonable claims administration expenses. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 470 (S.D.N.Y. 2004) (the party "estimate[s] . . . additional expenses will be incurred to implement the settlement. Those expenses will be submitted to the Court in a supplemental application.").

\* \* \*

_RMB_
RICHARD M. BERMAN, U.S.D.J.
5/19/10

8